The BANK OF NEW GLARUS,
a Wisconsin banking corporation,
Plaintiff-Respondent,

v.

Clarence Allen SWARTWOOD, Kathy Swartwood and
John Doe and Jane Doe, Defendants,

AMERIQUEST MORTGAGE COMPANY,
Defendant-Appellant.

Court of Appeals

*No. 2005AP647. Submitted on briefs September 15, 2005.*
*—Decided October 26, 2006.*

2006 WI App 224

(Also reported in 725 N.W.2d 944.)

459

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David E. McFarlane* and *Sheila M. Sullivan* of *Bell, Gierhart & Moore, S.C.*, Madison, and *Gary B. Bodelson*, Minneapolis, MN.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Todd W. Schluesche* of *Kittelsen, Barry, Wellington, Thompson and Schluesche*, Monroe.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. DYKMAN, J. The dispute in this case is between Ameriquest and Bank of New Glarus, both of which claim a primary secured interest in real estate owned by Clarence and Kathy Swartwood. Ameriquest appeals from a summary judgment order determining that a real estate security agreement (RESA) held by Bank of New Glarus encumbering the Swartwood property had priority over a mortgage held by Ameriquest. Ameriquest also appeals from the circuit court's determination that the Swartwoods owed Bank of New Glarus $149,267.17.[1]

---

[1] By agreement between the parties, Ameriquest took title to the Swartwood property in July 2005. In January 2006, Bank of New Glarus and Ameriquest informed us that they had reached an agreement that the property had been sold, and the proceeds paid into an account that will be disbursed in a manner consistent with the adjudication of the disputed issues in this case. Ameriquest has withdrawn its request to set aside the foreclosure proceeding and subsequent conveyance.

¶ 2. We conclude: (1) Ameriquest's mortgage is subordinate to Bank of New Glarus's RESA; (2) Ameriquest has not waived its defenses of fraud and failure of consideration; (3) Ameriquest's fraud defense is precluded by the *D'Oench* doctrine,[2] but its failure of consideration defense is not; and (4) the issue of whether the bank is a holder in due course cannot be resolved on summary judgment. Accordingly, we affirm the summary judgment order insofar as it concludes that Bank of New Glarus's RESA has priority over Ameriquest's mortgage. We reverse that portion of the default judgment determining the amount owed to Bank of New Glarus, and remand for further proceedings.[3]

## BACKGROUND

¶ 3. The following facts are taken from the pleadings and the parties' summary judgment submissions. In October 2002, Clarence and Kathy Swartwood obtained a loan from Ameriquest Mortgage Corporation in the amount of $78,750, secured by a mortgage encumbering their property in Blanchardville, Wisconsin. Part of the Village of Blanchardville is situated in Iowa County, while another part is in Lafayette County. The Swartwood property is on the Iowa County side of the village, but Ameriquest mistakenly recorded its

[2] *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447 (1942). Some cases refer to the doctrine as the *D'Oench, Duhme* doctrine.

[3] In August 2004, the Swartwoods filed a petition in bankruptcy. Thus, if they received a discharge, and their obligations were not contested in the bankruptcy court, the question as to the amount of their notes is moot as to them, but not as to Ameriquest and Bank of New Glarus.

mortgage in Lafayette County. Ameriquest recorded its mortgage in Iowa County on December 9, 2003.

¶ 4. Bank of New Glarus's complaint states that on March 24, 2003, the First National Bank of Blanchardville (First National) loaned the Swartwoods a total of $113,111.80, evidenced by three promissory notes in the amounts of $51,120.76, $43,211.84 and $18,779.20. These notes were secured by a RESA in favor of First National encumbering the same property described in Ameriquest's mortgage. First National properly recorded the RESA in the Iowa County Register of Deeds.

¶ 5. An affidavit of Clarence Swartwood contradicts Bank of New Glarus's account of the Swartwoods' loans from First National. Swartwood states that in early 2003 he and his wife met with First National President Mark Hardyman to discuss taking out a small business loan. He avers that Hardyman asked whether there were liens on the Swartwoods' property. Swartwood informed Hardyman that Ameriquest held a $75,000 mortgage on the property. He states that he and his wife agreed with Hardyman that the new loan would be secured by a second mortgage on the property, but that "it was understood and agreed" that this mortgage was subordinate to the Ameriquest mortgage. Swartwood states that he and his wife signed forms that Hardyman said were related to the loan, but that these forms were blank when they signed them.[4] The documents, submitted as exhibits, contain the following notice in bold above the Swartwoods' signatures: "Notice to Customer (a) Do not sign this before you read the

---

[4] The Swartwood affidavit states that in June 2001, the Swartwoods had agreed to borrow money from Hardyman for another purpose, and that Hardyman gave them blank loan forms to sign at that time as well.

writing on the reverse side, even if otherwise advised. (b) Do not sign this if it contains any blank spaces."

¶ 6. Swartwood states that as a result of the 2003 meeting with Hardyman, approximately $18,000 was deposited in the Swartwoods' business checking account. Ameriquest observes that this amount approximates the $18,779.20 amount referenced in one of the three promissory notes.

¶ 7. First National was placed in receivership by the Federal Deposit Insurance Corporation (FDIC) in mid-2003. The Swartwoods' account was closed. Clarence Swartwood states that checks written on the account were returned unpaid, and that only approximately $10,000 of the $18,000 loan was expended. He avers that he and his wife never agreed to pay the amounts indicated in two of the three promissory notes.

¶ 8. FDIC was appointed as the receiver of First National, although the record contains no documentation from the Iowa County Register of Deeds showing its appointment. An affidavit of Warren Laube, president of Bank of New Glarus, states that on July 23, 2003, his bank purchased from FDIC a package of 109 loans issued by the failed First National. The loans to the Swartwoods were a part of this package. Laube states that his bank received an assignment of mortgage dated October 8, 2003, that was recorded in the Iowa County Register of Deeds on October 10, 2003. In the assignment, Bank of New Glarus received First National's interest in the RESA and the three promissory notes. Affidavits of Laube and James Schaller, a vice president of Bank of New Glarus, state that neither they nor any other employee of Bank of New Glarus had actual or constructive notice of Ameriquest's mortgage prior to their bank receiving and recording its assignment of mortgage.

¶ 9. In March 2004, Bank of New Glarus brought this foreclosure action against the Swartwoods for non-payment of its notes. The Swartwoods filed a petition in bankruptcy in October 2004. Bank of New Glarus obtained an order lifting the stay that resulted from the bankruptcy filing. It moved for summary judgment against Ameriquest on the issue of mortgage priority, and for default judgment against the Swartwoods.

¶ 10. The circuit court granted summary judgment in favor of Bank of New Glarus on the issue of mortgage priority, and granted Bank of New Glarus's motion for default judgment on its claim against the Swartwoods. As a result, it determined that the Swartwoods must pay $149,267.17 to redeem their property from the Bank of New Glarus foreclosure.

¶ 11. The court issued findings of fact and conclusions of law, a judgment of foreclosure and replevin, and a decision on the motions for summary judgment and default judgment.[5] It found that the Swartwoods agreed to pay the three promissory notes in the amounts indicated on the notes. The court further noted that "Ameriquest ha[d] alleged that the Swartwoods gave First National Bank of Blanchardville oral notice of the existence of a mortgage to Ameriquest at the time of First National Bank of Blanchardville's RESA" but that

---

[5] Findings of fact in a summary judgment order are always worrisome because summary judgment may only be granted where there are no disputed issues of material fact. *See* Wis. Stat. § 802.08(2) (all references are to 2003-04 Wis. Stats.). Nonetheless, because we review summary judgments de novo, *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987), the potential for a reversal is diminished. Still, we discourage this practice because it increases the possibility of a finding as to a disputed fact, leading to an erroneous conclusion.

"there [wa]s no credible basis to support Ameriquest's claim in this regard."[6] The court concluded that Bank of New Glarus was a good-faith purchaser within the meaning of the recording statutes because at the time of purchase it could not have discovered that Ameriquest's mortgage was filed by mistake in Lafayette County by searching the Iowa County Register of Deeds. Noting the "newsworthy significance" of First National's failure in the bank's southwestern Wisconsin service area, the court "t[ook] judicial notice of [First National's] failure, and the intervention of FDIC, if it be necessary to take such judicial notice."[7] The court further concluded that Bank of New Glarus was a holder in due course of the Swartwood loan documents.

¶ 12. Ameriquest appeals from the circuit court's order of summary judgment in favor of Bank of New Glarus on the issue of mortgage priority, and the amount of the judgment against the Swartwoods.

## DISCUSSION

¶ 13. We review a grant or denial of summary judgment independently, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). This case involves the interpretation of statutes and their application to a set of facts, both questions of law that we review de novo. *Bill's Distrib-*

---

[6] *See* ¶ 11 n.5, *supra.*
[7] *See* ¶ 11 n.5, *supra.*

*uting, Ltd. v. Cormican,* 2002 WI App 156, ¶ 6, 256 Wis. 2d 142, 647 N.W.2d 908.

## I. Interpretation of WIS. STAT. §§706.08 and 706.09

■

¶ 14. Ameriquest does not dispute that its failure to record its mortgage in the proper county until December 2003—after First National recorded the RESA now held by Bank of New Glarus—prevents it from asserting priority based on being the first to acquire an interest in the property. Rather, Ameriquest contends that it is entitled to summary judgment on the issue of priority because Bank of New Glarus's chain of title in the Iowa County Register of Deeds contains a "gap"; the record does not show FDIC's appointment as receiver of the First National loans purchased by Bank of New Glarus. It asserts that, as a result, FDIC was a stranger to the record chain of title, and, consequently, Bank of New Glarus cannot claim the protection of the recording statutes.

■

¶ 15. WISCONSIN STAT. § 706.08(1)(a) protects purchasers of real estate against prior adverse claims that are not properly recorded as provided by law.[8] *See Associates Fin. Servs. Co. of Wisconsin, Inc. v. Brown,*

---

[8] WISCONSIN STAT. § 706.08 provides in part:

**Non-recording, effect.** (1)(a) . . . [E]very conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first.

. . . .

(2) Where a public tract index or abstract of title index is maintained, an instrument properly indexed therein and recorded

2002 WI App 300, ¶ 9, 258 Wis. 2d 915, 656 N.W.2d 56. It provides that "every conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first." Section 706.08(1)(a). As we have explained, "[a] purchaser or mortgagee in good faith is one without notice of existing rights in land." *Grosskopf Oil, Inc. v. Winter*, 156 Wis. 2d 575, 584, 457 N.W.2d 514 (Ct. App. 1990) (citation omitted).

¶ 16. A related section, WIS. STAT. § 706.09(1), addresses under what circumstances a conveyance will have priority over a prior adverse claim.[9] Section 706.09(1)(b) provides that an adverse claim based on a

---

at length at the place there shown shall be deemed to be duly recorded for purposes of this section, despite any error or omission in the process of including the instrument, or prior instruments in the same chain of title, in other records.

This section and WIS. STAT. § 706.09(1), *see* ¶ 16 n.9, *infra*, refer to "purchasers" of real estate, but have been consistently applied to other interest holders as well, such as mortgagees. *See, e.g., Associates Fin. Servs. Co. of Wisconsin, Inc. v. Brown*, 2002 WI App 300, ¶ 11, 258 Wis. 2d 915, 656 N.W.2d 56 ("A purchaser or mortgagee takes its interest in good faith if it is without notice, constructive or actual, of a prior conveyance.") (citation omitted). For the sake of convenience, we will refer to "purchasers" when discussing these statutes, even though neither Ameriquest nor Bank of New Glarus was a "purchaser" of real estate here.

[9] WISCONSIN STAT. § 706.09 provides in part:

(1) WHEN CONVEYANCE IS FREE OF PRIOR ADVERSE CLAIM. A purchaser for a valuable consideration, without notice as defined in sub. (2), and the purchaser's successors in interest, shall take and hold the estate or interest purported to be conveyed to such purchaser free of any claim adverse to or inconsistent with such estate or interest, if such adverse claim is dependent for its validity or priority upon:

. . . .

conveyance outside of the chain of title not identified by definite reference will not have priority over a valid subsequent interest.

¶ 17. Ameriquest cites *Zimmer v. Sundell*, 237 Wis. 270, 296 N.W. 589 (1941), for the proposition that no purchaser or mortgagee can claim protection under Wis. Stat. § 706.08 unless the prior recording upon which the claimed protection is based is in the record chain of title. There, the original owner conveyed the same property twice, once in 1928 and again in 1933. *Zimmer*, 237 Wis. at 272. Neither purchaser recorded their interest in the property at the time of the sale, and both purchasers subsequently sold their respective interests to new owners. *Id.* The interest first conveyed in 1928 was sold to Sundell, et. al., in 1932, and the interest conveyed in 1933 was sold later in 1933 to the Zimmers. *Id.* Sundell's interest was finally recorded in January 1936, while the Zimmers' was recorded in April 1936. *Id.* The Zimmers brought a

(b) *Conveyance outside chain of title not identified by definite reference.* Any conveyance, transaction or event not appearing of record in the chain of title to the real estate affected, unless such conveyance, transaction or event is identified by definite reference in an instrument of record in such chain. No reference shall be definite which fails to specify, by direct reference to a particular place in the public land record, or, by positive statement, the nature and scope of the prior outstanding interest created or affected by such conveyance, transaction or event, the identity of the original or subsequent owner or holder of such interest, the real estate affected, and the approximate date of such conveyance, transaction or event.

. . . .

(2) Notice of Prior Claim. A purchaser has notice of a prior outstanding claim or interest, within the meaning of this section . . . at the time such purchaser's interest arises in law or equity[.]

quiet title action against Sundell in 1937 "when they went to pay the taxes and discovered that [Sundell] had paid them." *Id.*

¶ 18. Construing Wis. Stat. § 235.49 (1939), since renumbered Wis. Stat. § 706.08, the *Zimmer* court determined that, while the Zimmers were purchasers in good faith because they had no notice from the record of Sundell's claim to the property, they were not entitled to the protection of the statute because the Zimmers' "recorded deed had no apparent connection with or derivation from the [original seller's] title—in other words, it was a mere fugitive deed, and plaintiffs were strangers to the title so far as the record disclosed." *See Zimmer*, 237 Wis. at 273. The court concluded:

> [P]ersons situated as are the plaintiffs are not entitled to the protection of the statute because their chain of title back to the common grantor was not first recorded . . . . If one who has no title under the laws governing conveyances is to have a superior one under the recording acts, it should be because he has relied upon the record, and when he purchases from one who is a stranger to the record title he has no grounds for such reliance.

*Id.* at 275–76. Ameriquest argues that, like the plaintiff in *Zimmer*, Bank of New Glarus purchased its interest from a party who was "a stranger to the record title," and thus cannot rely on the recording statutes to assert the priority of its claim. Ameriquest reasons that Bank of New Glarus is a stranger to the record title because nothing of record shows that FDIC was appointed as First National's receiver.

473

¶ 19. Bank of New Glarus contends that *Zimmer* has been abrogated by WIS. STAT. § 706.08(2).[10] This subsection provides that

> [w]here a public tract index or abstract of title index is maintained, an instrument properly indexed therein and recorded at length . . . shall be deemed to be duly recorded for purposes of this section, despite any error or omission in the process of including the instrument, or prior instruments in the same chain of title, in other records.

Section 706.08(2). Bank of New Glarus cites the following comment to § 706.08(2): "New provision. To reverse, where notice is assured by tract index, the 'chain of title' rule adopted in *Zimmer v. Sundell*, 237 Wis. 270, 296 N.W. 589." Laws of 1969, c. 285 § 23.

¶ 20. Bank of New Glarus concedes that its summary judgment submissions do not show that Iowa County maintains a public tract index. It requests that we take judicial notice that such an index exists, or accept an affidavit from the Iowa County Register of Deeds attesting to the existence of the tract index. Ameriquest notes that while Bank of New Glarus argues that the index exists, Bank of New Glarus does not assert that this tract includes "an instrument properly indexed therein and recorded at length at the

---

[10] Ameriquest did not cite *Zimmer v. Sundell*, 237 Wis. 270, 296 N.W. 589 (1941), to the circuit court. Ordinarily, we would not respond to an issue not raised in the circuit court. But Ameriquest argued the issues raised in *Zimmer* to the circuit court. Bank of New Glarus responded to Ameriquest's arguments, but it, too, did not cite *Zimmer*. Because both parties argued the issues of *Zimmer* below, it would be unfair to prevent them from arguing from *Zimmer* now.

474

place there shown." We decline Bank of New Glarus's invitation to go beyond the record. We will discuss the reach of *Zimmer* later.

¶ 21. Next, citing WIS. STAT. § 706.09, Ameriquest also contends that Bank of New Glarus's claim of priority must fail because it is dependent on an "event not appearing of record in the chain of title," FDIC's appointment as First National's receiver. *See* § 706.09(1)(b). Bank of New Glarus responds that by its plain language, § 706.09 applies only at the time a purchaser's or mortgagee's interest arises. In Bank of New Glarus's view, the statute would not apply because Ameriquest acquired its mortgage in October 2002, over a year before First National acquired its RESA.

¶ 22. Ameriquest's various arguments require that we construe portions of WIS. STAT. §§ 706.08 and 706.09. When interpreting a statute, we look first to the text of the statute to ascertain its meaning. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the text of the statute yields one clear meaning, we ordinarily end the inquiry and apply that meaning. *Id.* Scope, context, and purpose of the statute are relevant to this analysis insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶¶ 46–48.

¶ 23. We have explained that a purpose of both WIS. STAT. § 706.08 and § 706.09 is to protect purchasers or mortgagees from adverse claims by requiring the recording of interests. *See Turner v. Taylor*, 2003 WI App 256, ¶ 8, 268 Wis. 2d 628, 673 N.W.2d 716 ("[Section 706.09] extinguishes interests or claims that are adverse to or inconsistent with merchantable title when [specified] circumstances are present."); *Brown*, 258

Wis. 2d 915, ¶ 9 ("The purpose of [§ 706.08(1)(a)] is to render record title authoritative to protect a purchaser who relies on the record and is a purchaser in good faith . . . .") (citation omitted). "Recording statutes forbid those who do not record their interest from asserting title against persons who innocently purchase land from the record owner." *State v. Barkdoll*, 99 Wis. 2d 163, 167 n.3, 298 N.W.2d 539 (1980).

¶ 24. Whether purchasers and mortgagees are entitled to protection from an adverse claim by Wis. Stat. § 706.08 and/or § 706.09 depends upon whether they have notice of the adverse interest. Section 706.09(1) provides that "[a] purchaser for a valuable consideration, without notice as defined in sub. (2) . . . shall take" priority over an adverse claim. "To be entitled to the benefits of [§ 706.09], a purchaser must not have notice of the adverse claim . . . ." *Schapiro v. Security Savings and Loan Assoc.*, 149 Wis. 2d 176, 186, 441 N.W.2d 241 (Ct. App. 1989). Though § 706.08 does not use the word "notice," the requirement that a bona fide purchaser lack notice of an adverse claim to extinguish that claim has long been understood to be a part of the statute. "A purchaser or mortgagee takes its interest in good faith [under § 706.08] if it is 'without notice, constructive or actual, of a prior conveyance.' " *Brown*, 258 Wis. 2d 915, ¶ 11 (quoting *Kordecki v. Rizzo*, 106 Wis. 2d 713, 719–720, 317 N.W.2d 479 (1982)).

¶ 25. In Ameriquest's view, notice under Wis. Stat. §§ 706.08 and 706.09 is not tied to the time of purchase; the purchaser is entitled to the protection of the statutes even if the purchase preceded in time the purchase upon which the adverse claim is based. It argues:

[I]t is undisputed that the Ameriquest mortgage was obtained for value many months before the claimed appointment of the FDIC as a receiver. Accordingly, Ameriquest could not possibly have had notice of the claimed appointment of the receiver prior to obtaining its mortgage interest because the alleged appointment had not yet occurred.

¶ 26. Ameriquest's view turns the statutes upside down. A purpose of WIS. STAT. §§ 706.08 and 706.09 is not to establish additional recording requirements that may be used to defeat a subsequent party's interest in property irrespective of when the adverse claim came into existence or when the prospective buyer's interest arises. The texts of both statutes evidence an intent to protect a purchaser or mortgagee only from adverse claims that arose prior to the time when the purchaser's interest arises. Section 706.09(2), which defines notice as used in § 706.09(1), could not be more plain: "A purchaser has notice of a prior outstanding claim or interest . . . at the time such purchaser's interest arises in law or equity . . . ."

¶ 27. Similarly, WIS. STAT. § 706.08(1) provides that conveyances not recorded as provided by law are void not against any purchaser irrespective of time of purchase, but "as against any *subsequent* purchaser." (Emphasis added.) Section 706.08(1) disfavors holders of interests who "mislead" others by failing to record their interest, and gives priority to those who "rely on the record and purchase in good faith." *Kordecki*, 106 Wis. 2d at 718. Implicit is the understanding that the subsequent purchaser is deserving of priority because it checked the record and was misled *at that moment in time* by the prior interest holder's failure to properly

record its interest. "The theory is that if the fact of ownership is concealed the person concealing ownership cannot assert ownership to the detriment of one who acts in reliance upon silence." *Barkdoll*, 99 Wis. 2d at 167 n.3 (citation omitted).

¶ 28. We acknowledge that certain language in *Zimmer* could be read to support Ameriquest's position.[11] However, *Zimmer* is readily distinguishable, and may have been overruled by statute, if the facts asserted by Bank of New Glarus prove to be correct. Bank of New Glarus is not situated as the plaintiffs were in *Zimmer*. There, Zimmer's "recorded deed had no apparent connection with or derivation from the [original owner's] title—in other words, it was a mere fugitive deed." *Zimmer*, 237 Wis. at 273. In this case, Bank of New Glarus's assignment of mortgage has a direct connection to the parties' common grantor, the Swartwoods. The document states that it "assigns to the Bank of New Glarus a Mortgage executed by Allen Swartweood [sic] and Kathy Swartwood to Lender and recorded in the office of the Register of Deeds of Iowa County, Wisconsin, as Document No. 261024 in Vol. 662 Page 477." The document also states: "This assignment is made . . . by the F.D.I.C. in its corporate capacity or as receiver. Reference power of attorney recorded

---

[11] At least one authority has challenged the rationale behind *Zimmer*. Citing the Wisconsin case, the commentator notes that

> some cases hold that one whose grantor's deed is unrecorded cannot be a [bona fide purchaser]. These decisions are not strictly logical, and it is very hard to justify them in terms of constructive or inquiry notice, for the facts mentioned give no clue as to whom an inquiry should be made.

3 Baxter Dunaway, Law of Distressed Real Estate § 40:14 (2006).

in the Iowa County Register of Deeds on September 4, 2003, as document #266818."

¶ 29. Moreover, while the Zimmers did not discover the existence of an adverse claim until they found that Sundell had paid the taxes on the property, Ameriquest has not contended (nor could it) that FDIC was never appointed as a receiver, only that its appointment was not recorded in the register of deeds.

¶ 30. Because Ameriquest's argument that its claim is superior to that of Bank of New Glarus is based on a misreading of Wis. Stat. §§ 706.08 and 706.09, we conclude that it is not entitled to summary judgment on the issue of priority.

## II. Notice of Ameriquest's Mortgage

¶ 31. Ameriquest contends that, even if it is not entitled to priority based on the recording statutes, it is entitled to summary judgment on the issue of priority because First National had notice of the Ameriquest mortgage before the RESA was executed in March 2003. Ameriquest points to the affidavit of Clarence Swartwood averring that he told First National President Mark Hardyman about the existence of the Ameriquest mortgage before signing the RESA, and that "it was understood and agreed that [the RESA] would be subordinate to the Ameriquest mortgage."[12]

---

[12] The trial court improperly made a credibility determination on the motion for summary judgment regarding this statement in the Swartwood affidavit, stating: "Ameriquest has alleged that Swartwoods gave First National Bank of Blanchardville oral notice of the existence of a mortgage to Ameriquest at the time of First National Bank of Blanchardville's RESA; but the Court finds that there is no

Ameriquest does not assert that Bank of New Glarus had actual knowledge of the Ameriquest mortgage; rather, it asks us to adopt a new rule that an assignee is bound by the knowledge of an assignor concerning prior encumbrances. Ameriquest thus argues that, because First National's knowledge of the prior mortgage should be imputed to Bank of New Glarus, the bank was not a purchaser in good faith under WIS. STAT. § 706.08(1)(a) and cannot claim priority.

¶ 32. Ameriquest cites one case for its proposed rule, *Moore v. Lium*, 80 N.W.2d 657 (N.D. 1957). We conclude *Moore* is distinguishable on its facts, and, moreover, is incompatible with Wisconsin statutes.

¶ 33. In *Moore*, the plaintiffs made a loan to the Liums secured by a chattel mortgage on highway construction equipment owned by the Liums. *Id.* at 658. When the Liums ran into financial troubles and defaulted on a construction contract, local authorities took the encumbered highway equipment and sold it at an execution sale to Northwestern Equipment Company of Minot (Minot Company). *Id.* at 658–59. Coincidentally, Minot Company possessed its own claims against the Liums, an open account and a promissory

---

credible basis to support Ameriquest's claim in this regard." Whether the averments contained in Swartwood's affidavit were "credible" was not for the trial court to decide on a motion for summary judgment. *See Nelson v. Albrechtson*, 93 Wis. 2d 552, 556, 287 N.W.2d 811 (1980) ("The summary-judgment procedure is not a trial on affidavits.") (citation omitted). However, the trial court's error has no bearing on the outcome here because we have concluded that any knowledge First National may have had of the prior mortgage cannot be imputed to Bank of New Glarus and thus would not jeopardize Bank of New Glarus's good-faith purchaser status.

note which it acquired from Northwestern Equipment of Fargo (Fargo Company). *Id.* at 660–61.

¶ 34. The *Moore* court noted that the rule of caveat emptor[13] applies to execution sales, then held that "it follows that the title acquired by [Minot Company] could not cut off prior valid claims or other encumbrances in force at the time of the execution sale." *Id.* at 660. It then rejected Minot Company's claim that it was a purchaser in good faith because it lacked knowledge of the Liums' indebtedness and mortgages against them. *Id.* at 661–64. The court deferred to the finding of the trial court that Fargo Equipment had actual knowledge of the Liums' mortgages before it extended them credit, and concluded, without discussion or citation to authority, that "[i]t must follow also that the Northwestern Equipment Company of Minot as assignee of the Fargo Company acquired only the rights of its assignor." *Id.* at 664.

¶ 35. Unlike the present case, *Moore* arose in the context of an execution sale, and thus the party asserting good-faith purchaser status was subject to the doctrine of caveat emptor. Moreover, *Moore* did not concern an assignment of mortgage but an unsecured promissory note and an unsecured open account, neither of which is required to be recorded in the public records.

¶ 36. More importantly, Ameriquest's proposed rule is contrary to what constitutes notice of a prior claim under Wisconsin statutes and common law. No Wisconsin authority provides that notice of a prior claim is imputed to an assignee when the assignee lacks

---

[13] "Caveat emptor" translates to "let the buyer beware," and as a doctrine holds that "purchasers buy at their own risk." BLACK'S LAW DICTIONARY 236 (8th ed. 2004).

actual knowledge of the claim. WISCONSIN STAT. §§ 706.08 and 706.09, discussed earlier, establish under what conditions a purchaser or mortgagee has notice of a prior claim.

¶ 37. WISCONSIN STAT. § 706.09(2)(a) addresses situations when a purchaser is deemed to have notice of a prior claim "apart from the record." It provides that such notice may be "actual or constructive," then states that constructive notice may arise from use or occupancy of real estate. No other types of constructive notice are detailed. We described the policy behind § 706.09 "as a compromise between complete merchantability and the stringent protection of hidden land interests. Clearly, a stringent protection of hidden interests is unduly restrictive of land transfers, yet the complete removal of protection of legitimate interests would be intolerable." *Badger State Agri-Credit & Realty, Inc. v. Lubahn*, 122 Wis. 2d 718, 728–29, 365 N.W.2d 616 (Ct. App. 1985) (citation omitted).

¶ 38. Ameriquest does not dispute that the record of title did not provide Bank of New Glarus notice of its mortgage; it cannot because it did not record its mortgage in the proper county until several months after Bank of New Glarus acquired the RESA and notes from First National. Nor has it alleged on appeal that Bank of New Glarus had actual notice of the Ameriquest mortgage. Therefore, Ameriquest has no basis on which to assert that Bank of New Glarus was not a good-faith purchaser because it had notice of the Ameriquest mortgage. Accordingly, we conclude that the circuit court properly granted summary judgment in favor of Bank of New Glarus insofar as the circuit court concluded that Bank of New Glarus's RESA had priority over the Ameriquest mortgage.

### III. Fraud and Lack of Consideration Defenses

¶ 39. Ameriquest next contends that the submissions provide factual bases for claims that would defeat or lessen the amount of Bank of New Glarus's promissory notes and mortgage. First, Ameriquest asserts that whether First National fraudulently obtained two of the promissory notes held by Bank of New Glarus is an issue of fact. Second, Ameriquest contends that an issue of fact exists regarding the amount owed to Bank of New Glarus.[14]

### A. Ameriquest Did Not Waive Defenses of Fraud and Failure of Consideration

¶ 40. Bank of New Glarus contends that Ameriquest's claims of fraud and failure of consider-

---

[14] Bank of New Glarus contends that, because Ameriquest was not a party to the Swartwood—First National transactions, it lacks standing to assert defenses arising from these transactions. We disagree. A party has standing when it has a "legally protectible interest" in a controversy. *See City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 228, 332 N.W.2d 782 (1983). "[A] mortgage-foreclosure action is a quasi proceeding *in rem*, [which] affect[s] not only the title to the res, but likewise, rights in and to it possessed by individuals." *Syver v. Hahn*, 6 Wis. 2d 154, 160, 94 N.W.2d 161 (1959). Here, Ameriquest is not contesting Bank of New Glarus's default judgment on behalf of the Swartwoods. However, its interest in the Swartwood property is obviously affected by Bank of New Glarus's motion for default judgment; whatever Bank of New Glarus may recover on its notes secured by its RESA lessens the amount Ameriquest may recover on its note. Because Bank of New Glarus's foreclosure action against the Swartwoods is adverse to Ameriquest's interest in the Swartwood property, we conclude that it has standing to assert defenses related to the Swartwood—First National transactions.

ation are affirmative defenses that were waived because Ameriquest failed to raise them in its answer, citing Wis. Stat. § 802.02(3).[15] Ameriquest responds that if to raise these defenses it needed to request that its answer be amended, it did so in its second brief to the trial court on the motions for summary judgment. Ameriquest there asserted:

> [I]t should be stated that Ameriquest did not have any opportunity to know of the circumstances surrounding the Real Estate Security Agreement and promissory notes in question until after an Answer was served. If the court feels it is necessary to have the Answer formally amended in regard to [these arguments], it would be requested that the Defendant Ameriquest be allowed to make such an amendment. Section 802.09 Wis. Stats., states that amendments should be liberally granted . . . . In this case no trial has been scheduled and no request is being made for summary judgment based on [these arguments]. Those arguments are being presented simply to create a fact issue in response to the Plaintiff's Motion for Summary Judgment and Default Judgment. The Plaintiff is thereby not harmed by an amendment.

(Citation omitted.) Ameriquest argues that the trial court implicitly granted this request to amend its answer by making rulings concerning the defenses of fraud and lack of consideration. It also asserts that Bank of New Glarus would not suffer any prejudice by Ameriquest being allowed to raise these defenses.

---

[15] Wisconsin Stat. § 802.02(3) provides that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively any matter constituting an avoidance or affirmative defense including but not limited to the following: . . . failure or want of consideration, . . . fraud, illegality . . . ."

484

¶ 41. We agree with Bank of New Glarus that the claims asserted by Ameriquest must be pleaded as affirmative defenses. It is true that Ameriquest failed to make a motion to the trial court asking to amend its answer. However, we conclude that the request to amend that was included as a part of Ameriquest's summary judgment brief is sufficient to entitle Ameriquest to a decision on its request to amend its answer. Therefore, the trial court will consider this motion on remand. If the trial court grants Ameriquest's motion, it will necessarily have to consider Ameriquest's two defenses. While we express no opinion as to whether Ameriquest's motion should be granted, for reasons of judicial efficiency, we will address those defenses. Both involve only questions of law.

*B. Ameriquest's Defense of Fraud is Estopped by the D'Oench Doctrine*

■■■■■

¶ 42. Subsection (e) of 12 U.S.C. § 1823 (2000) "provides . . . that unwritten agreements between a federally insured financial institution and its borrowers or other obligors are not enforceable against the federal banking authorities when as receivers or otherwise they step into the financial institution's shoes."[16] *Resolution Trust Corp. v. Ehrenhaus*, 34 F.3d 441, 442 (7th

---

[16] 12 U.S.C. § 1823(e) (2000) provides in part:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(A) is in writing . . . .

Cir. 1994).[17] This statute codifies *D'Oench, Duhme and Co., Inc. v. FDIC*, 315 U.S. 447 (1942) (the *D'Oench* doctrine), which estops borrowers from asserting defenses against FDIC and other federal banking authorities based on agreements that are not contained in a bank's records. *See FDIC v. McClanahan*, 795 F.2d 512, 515 (5th Cir. 1986). One purpose of the doctrine is to ensure the reliability of a bank's records for FDIC and other banking authorities to determine the worth of a bank's assets. *Langley v. FDIC*, 484 U.S. 86, 91 (1987) (FDIC is often called on to make quick evaluations, such as whether to finance purchase of assets of a failed bank by another bank, and such evaluations would be unreliable "if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions"). *Id.* at 91–92. Another is to prevent fraud against federal banking authorities. *D'Oench*, 315 U.S. at 460 (doctrine bars defense against FDIC when borrower "len[ds] himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled").

¶ 43. In *Langley*, the U.S. Supreme Court determined that the *D'Oench* doctrine does not preclude defenses against such institutions that are based on "fraud in the factum," i.e., "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Langley*, 484 U.S. at 93–94. In establishing this exception, the *Langley* court relied in part on the U.C.C. section concerning the rights of a holder in due course. *Id.* (citing U.C.C. § 3–305(2)(c), Comment 7, 2 U.L.A. 241 (1977)).

---

[17] The statute in effect in 1994 was identical to the current version.

The court explained that the rationale for the fraud in the factum exception is that such fraud "render[s] the instrument entirely void, thus leaving no right, title or interest that could be diminished or defeated." *Id.* (citations omitted).

¶ 44. Ameriquest contends that its submissions support a defense against Bank of New Glarus's promissory notes that is based on the fraud in the factum exception to the *D'Oench* doctrine. Ameriquest asserts that the Swartwood affidavit shows that First National President Hardyman procured the Swartwoods' signatures to the promissory notes without the Swartwoods' knowledge of the notes' contents when Hardyman gave the Swartwoods the promissory notes to sign with the loan amounts left blank. The Swartwood affidavit states that as a result of signing these documents approximately $18,000 was deposited in their account; that neither he nor his wife signed any document stating that they agreed to pay the amounts of $43,211.84 and $51,120.76; nor did they receive any portion of these amounts.

¶ 45. Bank of New Glarus responds that the facts asserted in the Swartwood affidavit do not meet the fraud in the factum exception to the *D'Oench* doctrine. Our review of cases applying *D'Oench* to facts similar to those of the present case (i.e., those in which a borrower asserted a defense based on the signing of blank loan documents against a federal banking authority acting as a receiver) shows that such a circumstance does not constitute fraud in the factum. *See, e.g., FDIC v. Caporale*, 931 F.2d 1, 2 (1st Cir. 1991); *McClanahan*, 795 F.2d at 516–17; *FDIC v. Investors Assoc. X, Ltd.*, 775 F.2d 152, 155–56 (6th Cir. 1985); *FDIC v. Wright*, 942 F.2d 1089, 1098 (7th Cir. 1991).

¶ 46. In *McClanahan*, the defendant was convinced by the owner of a bank to sign a blank note with the understanding that the exact terms would be filled in later. *McClanahan*, 795 F.2d at 513–14. The bank owner then told McClanahan that his loan application had been turned down, and filled out the blank note for $62,500, taking the money for himself. *Id.* at 514. When the bank became insolvent, FDIC sued McClanahan to recover on the $62,500 note. *Id.* McClanahan raised the defense of fraud against FDIC, alleging that the bank owner had fraudulently induced him to sign the blank note. *Id.* The Fifth Circuit held that this defense was estopped by *D'Oench* because, by signing a blank note, "McClanahan lent himself to a scheme or arrangement whereby the appropriate banking authority was or was likely to be misled" and that he could "not now escape the obligations that appear on the face of the note that he signed." *Id.* at 517 (citation omitted).

¶ 47. Likewise, in *Caporale* the defendants contended they signed blank promissory notes that the bank later filled in without their authorization. *Caporale*, 931 F.2d at 2. When the bank later failed, FDIC as receiver sought to recover from the defendants. *Id.* The *Caporale* court estopped the defendants from asserting that the bank procured the notes by fraud. *Id.* The court concluded that "under *D'Oench*, [the defendants] may not rely on a condition that was not reflected in the bank's official records, even if their reliance was in good faith and there was no intent to defraud." *Id.*

¶ 48. Here, it is undisputed that the Swartwoods signed loan documents on which the amount was left blank. Under *McClanahan* and *Caporale*, this *action* is sufficient to estop a defense of fraud. In this case, the loan documents also included a warning printed in bold

placed just below the signature line: "Do not sign this if it contains any blank spaces." We conclude that Ameriquest's defense of fraud against Bank of New Glarus is precluded by the *D'Oench* doctrine.

### C. *Ameriquest's Failure of Consideration Defense Is Not Barred by D'Oench*

¶ 49. Ameriquest contends that an issue of fact exists concerning the amount of debt allegedly owed to Bank of New Glarus on the notes secured by the RESA. Ameriquest notes that the Swartwood affidavit avers that the Swartwoods received no money referenced by two of the promissory notes, and had used only $10,000 of the $18,000 placed in their checking account on the third note before First National was closed.

¶ 50. Bank of New Glarus contends that whether the amounts indicated on the notes were disbursed is immaterial because Ameriquest's failure of consideration defense is barred by *D'Oench*. It notes that non-disbursement has not been adopted by the U.S. Supreme Court or the Seventh Circuit Court of Appeals as an exception to the *D'Oench* doctrine. However, it does not cite any case that has expressly rejected a non-disbursement exception to *D'Oench*.

¶ 51. Ameriquest contends that a non-disbursement defense is not subject to the limitations imposed by 12 U.S.C. § 1823(e) or *D'Oench*, citing *FDIC v. O'Flahaven*, 857 F. Supp. 154 (D.N.H. 1994). There, the court examined § 1823(e), concluding that it "bar[red] only use of 'agreements' to deflect liability for an asset," and thus a non-disbursement defense was not statutorily barred. *O'Flahaven*, 857 F. Supp. at 162. The *O'Flahaven* court then considered the purposes of the *D'Oench* doctrine and held as follows:

Remembering that the focus of *D'Oench, Duhme* is on the ability of banking regulators to determine the value of assets and liabilities, it should be clear that a "failure of consideration" defense of the type presented here would not be barred by either *D'Oench, Duhme* or § 1823(e). In this case, whether the loan was in fact disbursed should be contained in the records of the bank. If the loan was disbursed, the failure of consideration defense is without merit. If the loan was not disbursed, there is no obligation under the loan contract for the FDIC to sue upon.

*Id.* It continued:

Discharge of the loan's obligations to repay based on the absence of any disbursal does not require proof of a separate or secret "side agreement." Rather, the nondisbursement of the loan proceeds requires proof of nothing more than an historical fact—one that should be plainly evident in the bank's official records.

. . . .

Further, to read *D'Oench, Duhme* as precluding proof that the loan was in fact paid or that funds were never in fact disbursed would unjustly enrich the FDIC and the failed bank's assets. Indeed, the FDIC makes no attempt to explain how its interpretation of *D'Oench, Duhme* would not preclude the FDIC from seeking to enforce a note perennially, each time asserting that *D'Oench, Duhme* precluded evidence of all prior payments. *D'Oench, Duhme* was intended to protect the FDIC and allow it to collect debts owed to failed lending institutions. If the loan was in fact paid or the funds never disbursed, no debt remains owing to the failed bank and thus, there is nothing for the FDIC to collect. This defense is not barred by either *D'Oench, Duhme* or § 1823(e).

*Id.* at 162–63.

490

¶ 52. The *O'Flahaven* court's analysis of the *D'Oench* doctrine is persuasive. We adopt its conclusion that neither *D'Oench* nor 12 U.S.C. § 1823(e) bars a failure of consideration defense based on non-disbursement of funds. Further, we agree with Ameriquest that the Swartwood affidavit raises an issue of fact as to whether the amounts referenced in the three promissory notes were disbursed.[18] We therefore conclude that the trial court improperly decided on summary judgment the amount owed to Bank of New Glarus. We remand for a trial to determine the amount properly owed to Bank of New Glarus, unless the evidence at trial shows that Bank of New Glarus is entitled to holder-in-due-course status, the issue to which we now turn.

---

[18] Regarding the $18,779.20 referenced in the third promissory note, which Swartwood states was placed in their account, the issue of fact raised by the Swartwood affidavit is how much of these funds were used by the Swartwoods. The Swartwood affidavit asserts that "[o]nly approximately $10,000 of the $18,000 loan was expended. When the bank closed, the checking account in which the loan had been deposited by the bank was also closed. Checks which were written off the account were returned unpaid." The parties' submissions lack necessary facts for us to conclude whether this assertion is correct or relevant, or to whom the $8,000 should be credited, if it should be. Accordingly, we conclude that the Bank of New Glarus has not prevailed on this issue on summary judgment and a trial is necessary to provide the facts from which the trial court can make its determinations as to the amount the Swartwoods owe the Bank of New Glarus. A trial is also necessary to determine whether the other two notes were without consideration.

491

## IV. Holder in Due Course

¶ 53. Finally, Bank of New Glarus contends it is a holder in due course under WIS. STAT. § 403.302.[19] As a holder in due course of the Swartwood loan documents, Bank of New Glarus would be insulated from nearly all claims that would defeat the terms of the documents, *see United Catholic Parish Schs. of Beaver Dam Educ. Ass'n v. Card Servs. Ctr.*, 2001 WI App 229, ¶ 9, 248 Wis. 2d 463, 636 N.W.2d 206, including Ameriquest's failure of consideration defense.

¶ 54. A holder-in-due-course defense is usually asserted to defeat the claim of an otherwise innocent party. *Id.*, ¶ 11. Thus, WIS. STAT. § 403.302 establishes strict requirements to determine holder-in-due-course

---

[19] WISCONSIN STAT. § 403.302 provides, as relevant:

(1) ..."holder in due course" means the holder of an instrument if all of the following apply:

(a) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity.

(b) The holder took the instrument:

1. For value;

2. In good faith;

3. Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;

4. Without notice that the instrument contains an unauthorized signature or has been altered;

5. Without notice of any claim to the instrument described in s. 403.306; and

6. Without notice that any party has a defense or claim in recoupment described in s. 403.305(1).

status: The holder "must take the instrument (1) for value; (2) in good faith; and (3) without notice that it is overdue or has been dishonored or that there is any defense or claim to it on the part of any person." *Id.* (citation omitted).

¶ 55. Ameriquest contends that Bank of New Glarus cannot meet the third factor of this test because it is undisputed that the Swartwoods' promissory notes were overdue on July 23, 2003, the date Bank of New Glarus acquired the notes from FDIC. An affidavit of Bank of New Glarus Vice President James Schaller states:

> Swartwoods have failed to comply with the terms and conditions of the First Note, the Second Note, the Third Note, the RESA, and the Chattel Security Agreements by failing and neglecting to make any monthly payments thereon since the March 24, 2003 date of the First Note, Second Note, and Third Note.

Bank of New Glarus asserts that there is nothing in the record to suggest that it had notice that the notes were overdue when it purchased them with the 106 other loans it purchased on that day.

¶ 56. Ameriquest replies that Bank of New Glarus, not Ameriquest, has raised the defense of holder-in-due-course status and thus Bank of New Glarus has the burden to prove facts showing that it is entitled to that designation. Ameriquest asserts that Bank of New Glarus needed to prove that it was without notice of the overdue status at that time to claim that it was a holder in due course. Ameriquest argues that because Bank of New Glarus's submissions fail to offer such proof, the only reasonable inference that can be made from Schaller's affidavit is that the

information about the overdue notes was available to Bank of New Glarus at the time of the purchase.

¶ 57. We agree with Ameriquest that Bank of New Glarus bears the burden of proving that it is entitled to holder-in-due-course status. However, in *Kane v. Kroll*, 196 Wis. 2d 389, 395, 538 N.W.2d 605 (Ct. App. 1995), we said this burden was "slight" because "the requirement that a holder show that it did not have knowledge of a defense or claim to the instrument involves proof of a negative fact." That said, our review of Bank of New Glarus's affidavits and other materials shows that it has failed to meet this de minimis burden. Neither Schaller's affidavit nor the affidavit of Bank of New Glarus President Warren Laube states that the bank lacked notice that the Swartwood notes were overdue.

¶ 58. However, the result is not as Ameriquest asserts. All that the parties' submissions show is that we cannot determine on summary judgment whether Bank of New Glarus is or is not a holder in due course. A conclusion on that issue necessarily requires a trial. *See* Wis. Stat. § 802.08(2). There, the trial court can find the facts necessary to determine whether Bank of New Glarus is entitled to holder-in-due-course status.

*By the Court.*—Judgments affirmed in part; reversed in part and cause remanded with directions.