**In re Brian Edward THULIS, Debtor.**

**In re Matthew Jay Weiler, Debtor.**

**Nos. 10–16841–7, 11–10043–7.**

United States Bankruptcy Court,
W.D. Wisconsin.

June 4, 2012.

See also 443 B.R. 508 and 2011 WL
6149269.

Mark J. Wittman, Esq., Marshfield, WI, for Trustee.

Eric S. Teske, Esq., Milwaukee, WI, for Creditor River Valley State Bank.

## ORDER SUSTAINING OBJECTION TO CLAIM

THOMAS S. UTSCHIG, Bankruptcy Judge.

In this, the third volume of a trilogy on the recording of real estate interests, the Court is called upon to crown the victor in

a dispute between a bankruptcy trustee and a secured creditor.[1] The debtors were the co-owners of some real estate located in Merrill, Wisconsin. They owned two adjoining parcels which were conveniently identified in the relevant legal descriptions as Lot 1 and Lot 2. River Valley State Bank filed a proof of claim asserting a secured claim against both lots even though its mortgage only appears to grant an interest in Lot 2. The chapter 7 trustee sold Lot 1 and received the net proceeds. He also objected to the bank's claim and contends that the bank's mortgage does not cover Lot 1.[2] The trustee requests that the Court enter an order finding that the bank is an unsecured creditor with regard to that lot (or, more accurately, as to the proceeds from the sale of that lot). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and the Court has jurisdiction under 28 U.S.C. § 1334. The parties submitted statements of fact and legal briefs. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052, as applicable in a contested matter under Fed. R. Bankr.P. 9014(c).

The parties agree on the basic facts. When the debtors bought the property, both lots were vacant and unimproved.[3] In October of 2004, the debtors obtained a $210,000.00 construction loan from the bank in order to build a single-family residence on the property. The debtors always intended to build on Lot 1, and there is no hint that they misrepresented their plans to the bank. Unfortunately for the bank, the mortgage described the collateral as Lot 2 rather than Lot 1.[4] After the home was completed, the debtors refinanced the construction loan.[5] The bank satisfied the construction mortgage and the parties executed a new note and mortgage to secure the refinancing loan in the amount of $198,450.00.[6] This subsequent mortgage also erroneously referenced Lot 2 instead of Lot 1, although it did include a statement that the collateral was "Homestead

---

1. Prior entries in the series were *Osberg v. Risler (In re Risler)*, 443 B.R. 508 (Bankr. W.D.Wis.2010) (in which the trustee was entitled to rely upon the "face of the deed" in determining the debtor's ownership interests), and *Osberg v. Fibison (In re Fibison)*, No. 10–25, 2011 WL 6149269, at *2 (Bank.W.D.Wis. Dec. 12, 2011) (in which the trustee had constructive notice of an unrecorded land contract and could not avoid it).

2. Because each debtor owned an undivided one-half interest in the land and each estate is technically separate, the bank filed a proof of claim in each case. The sales proceeds were divided between the two estates. The trustee's objection is the same in both cases. As such, the matters will be treated together for purposes of decision.

3. *See* ¶ 3 of the bank's statement of the case.

4. *See* Bank's Exhibit 2 as attached to the bank's statement of the case. The bank points out that the mortgage clearly indicated that it was a "construction mortgage" as the appropriate box had been checked. However, the section which contained a description of the property subject to the mortgage only referenced Lot 2. There was no reference whatsoever to Lot 1, whether by legal description, parcel identification number, or otherwise. Given that the land was currently vacant, the construction mortgage also noted that the property was not the debtors' homestead.

5. *See* ¶ 7 of the bank's statement of the case.

6. *See* ¶¶ 8 and 10 of the bank's statement of the case. The refinancing mortgage was dated March 31, 2005, and recorded on April 8, 2005. *See* Bank's Exhibit 3 as attached to the bank's statement of the case. Like the original construction mortgage, the refinancing mortgage only mentioned Lot 2. This is also true of the satisfaction of the construction mortgage the bank recorded on March 17, 2006. *See* Bank's Exhibit 4 as attached to the bank's statement of the case.

Property." [7]

Mr. Thulis filed bankruptcy in September of 2010, while Mr. Weiler filed his case the following January. From the date of the initial loan until the bankruptcy filings, the debtors and the bank apparently believed the mortgage actually covered the home.[8] After an investigation of the title record, the chapter 7 trustee concluded that the mortgage was defective as to the homestead property. He received a purchase offer as to Lot 1 for $170,000.00 and filed a motion to sell the property in June of 2011. The sale was approved and consummated. The trustee is presently holding the net proceeds pending resolution of his objection to the bank's claim. In his objection, the trustee does not deny that the bank *intended* to take a mortgage on Lot 1. He simply points out that in real estate transactions it is not the thought that counts, but what is recorded with the register of deeds.[9]

In support of his objection, the trustee submitted a title report prepared by Lincoln County Abstract Company which demonstrates that the debtors held title to Lot 1 under a warranty deed dated June 22, 2002.[10] The title company found no mortgages recorded against Lot 1, although there were two judgments docketed against Matthew Weiler in 2010. The title report also indicates that Lot 1 has a different tax key and parcel identification number than Lot 2, and a review of the bank's mortgage documents confirms that they only contain the legal description, tax key, and parcel identification number of Lot 2.[11] The bank characterizes the failure to include Lot 1 in its various mortgage documents as a mistake. The trustee asserts that under Wisconsin's recording statute this mistake means the bank does not have an enforceable mortgage against Lot 1 and its claim is not secured by the sale proceeds.

---

**7.** *See* Bank's Exhibit 3 as attached to the bank's statement of the case. There was also an additional mortgage in the amount of $48,600.00 dated April 5, 2005, and recorded on April 15, 2005. *See* Trustee's Exhibit C as attached to the trustee's statement of the case. Like all of the other documents, this additional mortgage only referenced Lot 2.

**8.** When Mr. Thulis filed his case, the schedules initially listed the real estate simply by its street address (N2466 County Road G) with an estimated fair market value for property tax purposes of $247,200.00 and a secured claim of $262,507.83. After the trustee's investigation, in December of 2010 Mr. Thulis filed an amended Schedule A which separated the two lots and indicated that Lot 2 was worth $6,200.00, while Lot 1 was worth $252,400.00 (and unencumbered). When Mr. Weiler filed his case in January of 2011, the property was described in his schedules in a manner consistent with Mr. Thulis's amended schedules. Given that the valuation in Mr. Thulis's original schedules and the amended Schedule A were based on the 2009 property tax records, it is unclear why there appears to be a discrepancy in the total value of the

property. However, this discrepancy is ultimately immaterial to the outcome.

**9.** A Google search for the phrase "it is the thought that counts" highlights an apt response, generally attributed to A.A. Milne's iconic character of Winnie–the–Pooh: "If it is the thought that counts, why are there fingers?" Courts routinely strive to honor the intent of the parties to a transaction (or the intent of the drafters of legislation), even when those intentions are murky at best. Many situations, however, reflect the reality of the observation by 19th century naturalist John Burroughs that the smallest deed is better than the greatest intention.

**10.** *See* Trustee's Exhibit A as attached to the trustee's statement of the case.

**11.** According to the title report, the tax key for Lot 1 is 16.063108.006.002, while the parcel identification number (or "Pin") is 016–3108–062–9992. The bank's various mortgage documents indicate that the subject property has a tax key of 22.313208.011.001.02 and Pin of 22–3208–313–9992.

When the debtors filed bankruptcy, their assets became part of a bankruptcy estate. The trustee's job is to turn any non-exempt estate assets into cash for the benefit of *unsecured* creditors.[12] The bankruptcy code provides the trustee with a variety of powers designed to equalize the distribution of assets to creditors. Some of these provisions allow the trustee to reel assets back into the estate even though the debtor transferred them away before the case was filed. *See* 11 U.S.C. §§ 547 and 548. Others allow the trustee to take advantage of state laws, such as Wisconsin's recording statute, to avoid (or knock out) improperly perfected security interests and mortgages. Under 11 U.S.C. § 544(a)(3):

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, and may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

This provision—part of the trustee's so-called "strong arm" powers—allows the trustee to act as a bona fide purchaser as of the petition date and avoid interests to the extent such a purchaser could do so

under state law. *See Resop v. Farmers & Merchs. State Bank,* 379 B.R. 831, 832 (W.D.Wis.2007); *HSBC Bank USA v. Perkins,* 451 B.R. 555, 561 (N.D.Ala.2011) (citing *Realty Portfolio v. Hamilton (In re Hamilton),* 125 F.3d 292, 298 (5th Cir. 1997)).

In Wisconsin, unrecorded conveyances or mortgages are void as against any subsequent purchaser who acts "in good faith." Wis. Stat. § 706.08(1)(a) provides that:

> [E]very conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first.

The purpose of the statute is to compel the filing of relevant instruments so that the complete title history of the property can be determined from the public record and subsequent purchasers are not hurt by hidden transactions. *See Kordecki v. Rizzo,* 106 Wis.2d 713, 317 N.W.2d 479, 482 (Wis.1982). A bona fide purchaser (or a good faith purchaser) is one without notice, either actual or constructive, of any existing rights in the land. *Bump v. Dahl,* 26 Wis.2d 607, 133 N.W.2d 295, 299 (Wis. 1965); *Osberg v. Fibison (In re Fibison),* No. 10–25, 2011 WL 6149269, at *2 (Bankr. W.D.Wis. Dec. 12,2011).

Other Wisconsin statutes also reflect the importance of proper recording. Wisconsin law anticipates that subsequent purchasers and other parties will normally obtain notice of earlier conveyances from

---

**12.** Secured creditors by definition have recourse to their collateral. Bankruptcy trustees normally engage in the sale of property only to the extent that it will produce some equity for the estate (and unsecured creditors). *See In re Riverside Inv. Partnership,* 674 F.2d 634, 640 (7th Cir.1982) ("As a general rule, the bankruptcy court should not order property sold 'free and clear of liens unless the court is satisfied that the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt's estate.").

the title record. *See* Wis. Stat. § 706.09(1)(b). A prior adverse interest which relies upon a conveyance outside the chain of title for its validity or priority is essentially subordinated to later—but properly recorded—interests. The statute clearly states that a subsequent purchaser's interest is superior to that created by:

> *Any* conveyance, transaction or event not appearing of record in the chain of title to the real estate affected, unless such conveyance, transaction or event is identified by definite reference in an instrument of record in such chain. No reference shall be definite which fails to specify, by direct reference to a particular place in the public land record, or, by positive statement, the nature and scope of the prior outstanding interest created or affected by such conveyance, transaction or event, the identity of the original or subsequent owner or holder of such interest, the real estate affected, and the approximate date of such conveyance, transaction or event (emphasis added).

In addition, Wis. Stat. § 706.09(2)(a) describes the limited situations in which a purchaser is deemed to have notice of a prior claim apart from the title record. A purchaser is presumed to have affirmative notice of a prior claim apart from the title record only if there is "notice, actual or constructive, arising from use or occupancy of the real estate by any person at the time such purchaser's interest therein arises." [13]

■■■■■■ Actual notice means exactly what it says. Someone who actually knows about a prior claim or interest cannot claim the benefit of the recording statute. However, actual notice is no defense against the bankruptcy trustee. *In re Sandy Ridge Oil Co.*, 807 F.2d 1332, 1336 (7th Cir.1986) ("actual knowledge is irrelevant under § 544(a)"). Constructive notice is a different story. Courts have typically concluded that a bankruptcy trustee's avoidance powers are subject to any state law limitations regarding constructive notice. *See In re Probasco*, 839 F.2d 1352 (9th Cir.1988); *Brown v. Job (In re Polo Builders, Inc.)*, 433 B.R. 700 (Bankr. N.D.Ill.2010). In that regard, Wisconsin law reflects a public policy that prospective purchasers are subject to any liabilities or interests which could have been discovered through a reasonable degree of care in consulting certain "avenues of information." *Bump*, 133 N.W.2d at 299.

■■■■■ The relevant avenues are the records in the office of the appropriate register of deeds, other public records, and the land itself, by which it is possible to "discover by observation the rights which arise outside of the recording system *by virtue of possession or use.*" *Bump*, 133 N.W.2d at 300 (emphasis added). If it is possible to discover something (such as evidence of a competing claim) by reviewing one of these resources, a subsequent purchaser cannot rely on the recording statute. In this case, the bank contends that the trustee had constructive notice of its mortgage. The bank's argument is premised upon the following ideas: (i) a review of the title records for *both* lots would have revealed the existence of the bank's mortgage, (ii) the only construction on the entire property was on Lot 1, and (iii) inquiry of those in possession (i.e., the debtors) would have

---

**13.** The limited nature of Wisconsin's "affirmative notice" provision is reflected by the statutory caveat:

> [N]o constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest; nor unless such use or occupancy is actual, visible, open and notorious.

revealed that the bank's mortgage was intended to cover their homestead.

■ The bank notes that a physical review of the property would reveal that the house and street address are associated with Lot 1, not Lot 2, and that Lot 2 was vacant even though the bank's mortgage indicated that it covered "Homestead Property." [14] In its brief, the bank cites both *Bump* and *In re Fitzpatrick*, 29 B.R. 701, 704 (Bankr.W.D.Wis.1983), for the proposition that a prospective purchaser is under a duty to "inquire of the one in possession," and submits that its mortgage could have been discovered simply by asking the owners about it. It is true that Wisconsin law charges prospective purchasers with constructive notice of certain things that might be ascertained by a review of the land or an inquiry of those in possession. *See Bump*, 133 N.W.2d at 300 ("the purchaser is charged with notice of all of the rights of the possessor and of all the facts connected therewith which a reasonable inquiry of the one in possession would disclose"). But as shall be seen shortly, the scope of the obligation to inquire is—and must be—a limited one, or else there would be little reason to record a mortgage at all.[15]

■ The bank also argues that the trustee had constructive notice of all documents of record as to both lots, presumably because both lots became part of the debtors' bankruptcy estates when the cases were filed. *See* 11 U.S.C. § 541(a)(1) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"). Although the trustee assumed the debtors' interests in both lots under § 541(a)(1), it does not matter that the debtors (or their bankruptcy estates) owned both lots when considering the trustee's strong arm powers as a bona fide purchaser under state law. An unrecorded interest is void as against a subsequent purchaser of "the same real estate or *any portion of the same real estate.*" *See* Wis. Stat. § 706.08(1)(a) (emphasis added). In the context of the trustee's powers under § 544(a), the relevant "portion" of the real estate is Lot 1, not the entire property.

A recent case decided by the Fourth Circuit Court of Appeals illustrates this distinction. In *SunTrust Bank, N.A. v. Macky (In re McCormick)*, 669 F.3d 177 (4th Cir.2012), the debtors owned two adjoining tracts of land. The creditor's mortgage was supposed to cover both tracts but was only recorded against one of them. The creditor argued that the trustee was obligated to review the title to both tracts, which would have revealed the existence of the lien. The court observed

---

**14.** The bank concedes that a search of Lot 1's title record would not reveal the mortgage. Someone who reviewed the records for Lot 2 would find a mortgage on "homestead" property, while a physical review of Lot 2 would reveal the lack of a house. This would seemingly suggest that a prospective subsequent purchaser of Lot 2 might have problems with constructive notice, but the question is whether a purchaser of Lot 1 would be similarly impacted.

**15.** In most instances a subsequent purchaser could easily ask the seller if there are any mortgages encumbering the property, and it would certainly be possible to envision a pub-

lic policy skewed toward requiring purchasers to make such an inquiry. However, the Wisconsin recording statute places the burden in the opposite direction as it is designed to eliminate the possibility of hidden conveyances or misrepresentation by requiring parties to properly record their interests in property. *See Kordecki*, 317 N.W.2d at 482 ("The recording statute is designed ... to protect purchasers who rely on the record and purchase in good faith and for value over those who have not recorded their interest in the real estate thereby possibly misleading others.").

that the creditor's efforts to "impute knowledge" of its lien to the trustee through his role as trustee of the bankruptcy estate "must fail except to the extent that a bona fide purchaser is imputed with knowledge." *Id.* at 182. As in the present case, a title search of Tract I would not have disclosed the existence of the creditor's lien, and "a bona fide purchaser of Tract I would have no reason to examine the title to Tract II . . . and thus cannot be imputed with knowledge of the status of title other than appears with respect to Tract I." *Id.*[16]

■■■ When considering the contours of constructive notice, it is important to remember that Wisconsin law generally reflects a policy in favor of the recording of interests rather than their disclosure through inquiry or interrogation of the current owners of the property. In *Kordecki*, the Wisconsin Supreme Court observed that "the purpose of the recording statute is to render record title *authoritative* to protect a purchaser who relies on the record and is a purchaser in good faith and for a valuable consideration." 317 N.W.2d at 482 (emphasis added). The doctrine of constructive notice is not intended as a substitute for recording (or for recording properly). Instead, it reflects the idea that a purchaser cannot turn a

blind eye to things revealed by a simple inspection of the public records or the property itself. *Bump*, 133 N.W.2d at 300. This responsibility to investigate the rights of others is matched by a corresponding duty on those with an interest in real property to properly record their claims so that others can easily discover them.[17]

■■■ To borrow from *McCormick*, the first question in this case is whether under Wisconsin law a subsequent purchaser of Lot 1 would have any reason—or obligation—to review the title record of Lot 2. In *Assocs. Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, 258 Wis.2d 915, 656 N.W.2d 56, 61 (2002), the court stated:

Wisconsin Stat. § 706.09(2)(b) does not require purchasers for value to see if there is *some way*, in the absence of a proper recording, that an interest could *possibly* be discovered. Indeed, such a requirement would be contrary to the very purpose of the recording statutes— to ensure a clear and certain system of property conveyance (emphasis in original).

*Brown* involved a quit claim deed which contained an erroneous legal description and consequently did not show up in the title record for the property.[18] Although it

16. *McCormick* is not determinative of the ultimate issue—namely, what knowledge may be imputed to a subsequent purchaser under Wisconsin law—but does illustrate the distinct roles of the trustee and the fact that the bank's challenge is to demonstrate that something in the record or from a review of *Lot 1* would give notice of its mortgage.

17. Under Wis. Stat. § 706.02, a document transferring an interest in real estate must identify the land with "reasonable certainty." *See Wiegand v. Gissal*, 28 Wis.2d 488, 492, 137 N.W.2d 412 (Wis.1965). The Wisconsin Supreme Court has indicated that a conveyance need not contain a legal description of the property, and the concept of "reasonable certainty" is satisfied if the conveyance "re-

fers to [the property] in such terms that by the aid of the facts and circumstances surrounding the parties at the time the court can . . . determine the land which is to be conveyed." *Kuester v. Rowlands*, 250 Wis. 277, 279, 26 N.W.2d 639 (Wis.1947). The bank's mortgage clearly conveys an interest in Lot 2, but cannot be said to convey an interest in Lot 1 with any level of certainty at all.

18. Specifically, the legal description contained a transposed number in the reference to a certified survey map. It indicated that the property being conveyed was Parcel 1 of Certified Survey Map No. 1151, rather than 1511. 656 N.W.2d at 57–58.

was *possible* that a computerized search in the register of deeds office might have uncovered the deed, the court emphasized that the quit claim deed was not properly recorded and the tract index would not have shown the deed in the chain of title. *Id.* at 60. As such, the deed was void as against a subsequent mortgagee who recorded first in good faith and for a valuable consideration. *Id.*

The law only presumes that a purchaser knows—or should know—about every *properly* recorded conveyance of the property. *Kordecki,* 317 N.W.2d at 482–83 (a purchaser in good faith is "deemed to have examined the record and to have notice of the contents of all instruments in the chain of title and of the contents of instruments referred to in an instrument in the chain of title"). The chain of title includes all "instruments, actions and proceedings discoverable by reasonable search of the public records and indices affecting real estate in the offices of the register of deeds and in probate and of clerks of courts of the counties in which the real estate is located." Wis. Stat. § 706.09(4). If a conveyance isn't in the chain of title, or referenced by something in the chain of title, a prospective purchaser need go no further as the inquiry into the record is complete. *Brown,* 656 N.W.2d at 60; *In re Carley Capital Group,* 117 B.R. 951, 959 (Bankr.W.D.Wis.1990).

In this case, the available records for Lot 1 did not refer to the bank's mortgage, nor did they contain anything that might give a prospective purchaser some reason to pause. *See Kordecki,* 317 N.W.2d at 483 (had purchaser examined the record, he would have found a lis pendens which would have led him to land contract foreclosure proceedings and documents terminating a redemption period); *Badger State Agri–Credit & Realty, Inc. v. Lubahn,* 122 Wis.2d 718, 365 N.W.2d 616, 621 (Wis.Ct.

App.1985) (lender was deemed to have notice of interest pursuant to trustee's deed executed in accordance with final probate judgment). The bank's mistake in preparing the mortgage precluded it from being found in a search of the "public records and indices affecting real estate in the offices of the register of deeds," and the mortgage was not mentioned in any of the instruments in Lot 1's chain of title. By definition, the bank's mortgage constitutes a conveyance *outside* the chain of title under Wis. Stat. § 706.09(1)(b). As such, a subsequent purchaser would take the property free of the mortgage unless the purchaser had "affirmative notice" of the claim within the meaning of § 706.09(2)(a).

The bank has tried to prove that prospective purchasers would have had affirmative notice of its mortgage by pointing to several undisputed facts about the property. As the trustee concedes, a physical review of the property would demonstrate that the street address and mailbox are associated with Lot 1, the house is on Lot 1, and Lot 2 sits vacant. The bank also suggests that a prospective purchaser could (or should) ask the owners whether there was a mortgage on the property. The common thread the bank uses to knit these facts together is the notion that if a purchaser looked hard enough, it could discover the bank's mortgage once it started checking out the records associated with Lot 2. After all, a prospective purchaser is charged with knowledge "of all of the rights of the possessor and of all the facts connected therewith which a reasonable inquiry of the one in possession would disclose." *Bump,* 133 N.W.2d at 300. The problem is that none of these things constitutes "affirmative notice" under Wisconsin law.

It is certainly *possible* that a prospective purchaser might be curious about the entire property and make inquiries about the

status of Lot 2, perhaps even to the point of learning about Lot 2's chain of title and discovering the bank's mortgage. It is also possible that the owners might volunteer information to a prospective purchaser about the adjacent lot or the existence of a mortgage. But the possible ways in which a purchaser might actually learn about a mortgage aren't legally relevant to the outcome.[19] What matters legally is that the bank's mortgage is not in Lot 1's chain of title.

■■■■■ The purpose of the recording statute is to ensure a "clear and certain system of property conveyance." *Brown*, 656 N.W.2d at 61. Wis. Stat. § 706.09(2)(a) addresses situations in which a purchaser is deemed to have notice of a prior claim "apart from the record." Because the bank's mortgage is outside the chain of title, it is void against the claim of the trustee as a subsequent purchaser unless such a purchaser would have had constructive notice of the mortgage "arising from use or occupancy of the real estate by any person at the time such purchaser's interest therein arises." As Wisconsin courts have noted, "No other types of constructive notice are detailed." *See Bank of New Glarus v. Swartwood,* 2006 WI App 224, 297 Wis.2d 458, 725 N.W.2d 944, 956 (2006). The policy behind this provision is a compromise between two competing goals—namely, merchantability of title and the protection of legitimate but otherwise hidden land interests. *Id.* (citing *Lubahn*, 365 N.W.2d at 621).

In balancing these goals, Wisconsin courts have imputed notice to purchasers only in limited situations, such as instances involving the adverse rights of someone actually in possession of the property or where the purchaser was deemed to have notice of issues with the property that were visible upon physical inspection. In this regard, the land is a "universal manuscript, open to the eyes of all," and a purchaser is expected to read that manuscript to discover any evidence of the rights of third parties. *See Horicon State Bank v. Kant Lumber Co.,* 165 Wis.2d 543, 478 N.W.2d 26, 28 (Wis.Ct.App.1991) (citation omitted).

*Bump*, for example, involved a boundary dispute. The defendant purchased part of an adjoining lot and landscaped the property to "physically incorporate" it into his yard. The sale was not recorded and the subsequent purchasers of the adjoining property contended that they owned the entire lot. The court concluded that the subsequent purchasers had constructive notice of the initial purchaser's claim because they could have located the actual boundaries of the property with relative ease and did not do so. The court observed that the possession of land is constructive notice of "whatever rights the possessor may have in the land if such possession is visible, open, clear, full, notorious, unequivocal, unambiguous, inconsistent with, or adverse to the title or interest of the vendor." *Id.* at 298.[20] The key to this inquiry is *possession*, as an occupant with an adverse interest isn't likely to hide it when asked.

■■■■ This concept fueled the result in both *Fitzpatrick* (which was cited by the

---

19. And actual knowledge is, as indicated previously, no defense to an action by the bankruptcy trustee.

20. In *Horicon*, a mortgagee who had purchased property at a foreclosure sale sought to set the sale aside after it learned of possible environmental contamination. The Wisconsin Court of Appeals relied on this same principle in rejecting the request, finding that if the lender had examined the property prior to the foreclosure sale, it "would have seen what its environmental evaluator saw and what its appraiser ought to have seen." 478 N.W.2d at 28.

bank) and this Court's own *Fibison* decision, both of which involved a dispute between a bankruptcy trustee and purchasers who acquired their interests pursuant to unrecorded land contracts. In each case, the trustee was found to have constructive notice of the land contract interests because the property was held by someone whose interest was inconsistent with record title.[21] A land contract purchaser who has sole possession of the property is clearly the sort of "inconsistent or adverse interest" that could be discovered through a simple inquiry. Under Wisconsin law, a bankruptcy trustee would clearly have constructive notice of such an interest. *See* Wis. Stat. § 706.09(2)(b) (a purchaser has notice apart from the record arising from "use or occupancy of the real estate by any person at the time such purchaser's interest therein arises"); *Fitzpatrick,* 29 B.R. at 704; *Fibison,* 2011 WL 6149269, at *4.

In this case, an inspection by a prospective purchaser of Lot 1 would have revealed nothing of consequence. There were no boundary disputes, no occupants with adverse interests, and no discernible problems with the property. A conversation with the occupants would have revealed that their stated interests were completely consistent with record title. Nothing in Wisconsin law would obligate a purchaser to ask about the status of the adjoining lot, nor does it require a purchaser to ask about unrecorded mortgages. In *Carley Capital Group,* the lender's mortgage was defective because there was no definitive identification of the obligations secured by the mortgage. In response to the trustee's effort to avoid the mortgage, the lender argued that a potential purchaser could have contacted either the debtors or the bank and learned of the lender's interest. The court rejected this argument and noted that there is "no basis upon which *Bump* can be extended to require that a possessor be asked the financing arrangements of an owner of the property." 117 B.R. at 958.

The rationale behind this is simple. Lenders—like the bank—are fully capable of protecting their interests by properly recording them. Hidden or defective property interests pose a threat to marketable title, and Wisconsin law is skewed in favor of protecting subsequent purchasers who have no notice of such interests. The law makes limited exceptions for those whose adverse interests are nonetheless visible upon simple inspection or inquiry, but it does not go as far as would be required to protect the bank in this case. It is one thing to tell a purchaser to ask the occupants if they own the property (or if they are leasing it). It is another to say that a purchaser must ask about financing arrangements and the existence of any mortgages, especially when state law places an obligation on parties to properly record their interests in the chain of title in order to avoid the need for such inquiries. The bank's mortgage was outside Lot 1's chain of title, and a subsequent purchaser of that lot would not have any affirmative notice of the bank's mortgage. As such, the mortgage is void as against a subsequent purchaser for value and the bank's claim must be treated as unsecured.

Accordingly,

IT IS ORDERED that the trustee's objection to the bank's secured claim is sustained. The bank's claim is reclassified as

---

**21.** In *Fitzpatrick,* the property was held by a tenant who had rented the property from the land contract purchasers. In *Fibison,* the property was held by the land contract vendee himself.

a general unsecured claim except to the extent that it is secured by Lot 2.