In re Douglas Lee COUILLARD and Deborah Mae Couillard, Debtors.

Christopher M. Seelen, Trustee of the Douglas Lee Couillard and Deborah Mae Couillard Estate, Plaintiff,

v.

Douglas Lee Couillard, Deborah Mae Couillard, and Bank of America, N.A., Defendants.

Bankruptcy No. 12–11610–7.
Adversary No. 12–132.

United States Bankruptcy Court, W.D. Wisconsin.

Nov. 9, 2012.

Christopher M. Seelen and Terri M. Smith, Ruder Ware, L.L.S.C., Eau Claire, WI, for Plaintiff.

J. Bushnell Nielsen and L. Katie Mason, Reinhart Boerner Van Deuren s.c., Milwaukee, WI, for Bank of America, N.A.

## DECISION

THOMAS S. UTSCHIG, Bankruptcy Judge.

Whether one is baking a cake, building a house, or recording a mortgage, sometimes even the slightest deviation from the directions can lead to catastrophe. Cakes don't rise, buildings fall down, and ... mortgages aren't perfected.[1] In this case, a lender made a mistake in recording its mortgage and then attempted to fix the problem. But for the debtors' bankruptcy, the error might have been considered inconsequential. However, the bankruptcy trustee believes that the mistake invalidates the lender's mortgage as against a subsequent purchaser under state law and

---

1. Yes, in the grand scheme of things, not quite as dramatic as a collapsing building, but nonetheless upsetting for the creditor who suffers such a fate. The trauma associated with poorly baked cakes, meanwhile, is proportionally related to the importance of the event involved.

brought this adversary proceeding to avoid the mortgage pursuant to 11 U.S.C. § 544(a). The lender has moved for summary judgment and the issue before the Court is whether, as a matter of law, the mortgage was properly recorded.[2]

This is a core proceeding under 28 U.S.C. § 157(b)(2)(K), and the Court has jurisdiction under 28 U.S.C. § 1334. This order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052. Summary judgment is appropriate where there are no disputed issues of material fact and the moving party is entitled to summary judgment as a matter of law. *See* Fed. R. Bankr.P. 7056, incorporating Fed.R.Civ.P. 56(c). Summary judgment is to be denied only if there is a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When necessary, all facts are construed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in favor of that party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir.2003); *see also Schuster v. Lucent Techs., Inc.*, 327 F.3d 569 (7th Cir. 2003).

The essential facts are as follows. The Couillards own property near Tomahawk, Wisconsin. Their property consists of two principal parcels, which for convenience will be called the "homestead parcel" and the "vacant land." In addition, there is an easement which provides access to a nearby road (otherwise, the other parcels are effectively landlocked).[3] They bought the entire property in 2007 and refinanced their mortgage the following year.[4]

The original purchase money mortgage contained accurate legal descriptions for all three pieces of the puzzle: the homestead parcel, the vacant land, and the easement. Unfortunately, the refinancing did not go as smoothly. During the refinancing, the Couillards executed a mortgage in favor of Countrywide Bank, FSB, the predecessor in interest to Bank of America.[5] This mortgage did not contain legal descriptions for either the homestead parcel or the vacant land.[6] The Couillards nonetheless signed the mortgage on April 23, 2008, and the bank recorded it in the office of the Lincoln County Register of Deeds on May 16, 2008.[7]

Someone apparently discovered the problem shortly after the mortgage was

2. The motion for summary judgment was fully briefed. Also before the Court are the lender's motion for relief from the automatic stay, the trustee's objection to the debtors' exemptions, and an adjourned pretrial. This decision shall, in due course, address these ancillary matters as well.

3. *See* ¶ 2 of the Corrected Affidavit of Karla Wyse (ECF Docket No. 23) submitted in support of the bank's motion for summary judgment and Exhibit 1 to that affidavit (the warranty deed by which the Couillards took title to the property). Exhibit 1 to the Affidavit of Christopher M. Seelen (ECF Docket No. 20) submitted in opposition to the motion is an aerial map which appears to show the easement area in relation to the home.

4. *See* Wyse Affidavit ¶ 4.

5. For purposes of this decision, these entities will collectively be referred to as "the lender" or "the bank."

6. The bank's brief in support of the motion for summary judgment acknowledged that Exhibit A to the original mortgage "did not contain the full legal descriptions for the other two parcels"—i.e., the homestead and the vacant land. *See* ECF Docket No. 13 at 3. During oral argument, the bank's counsel suggested an alternate theory: that a complete legal description might have been presented to the Register of Deeds and improperly scanned during intake. No evidence to support this theory has been proffered, and it cannot serve as a basis for granting the bank's motion.

7. *See* Exhibit 3 to the Wyse Affidavit.

recorded. On July 28, 2008, an "affidavit of correction" was executed by a person named Marilyn Montaperto.[8] The affidavit was then recorded on July 30, 2008.[9] The affidavit states that the April 23 mortgage contained an "error" regarding the legal description, and attached the "correct" descriptions of the homestead and the vacant land as an exhibit.[10] The affidavit does not indicate what, if any, role Ms. Montaperto played in the mortgage transaction, nor does it reflect that she had any personal knowledge of the "error." In addition, the affidavit is not signed by the Couillards or acknowledged by them in any way.[11]

The Lincoln County Register of Deeds posted the April 23 mortgage in the official grantor-grantee index.[12] The affidavit of correction was posted in the official tract index.[13] The bank appears to concede that the mortgage itself would not appear in the tract index. Instead, a search of the tract index would reveal the *affidavit of correction*, which would presumably lead an investigator to discover the mortgage. Meanwhile, a party searching the grantor-grantee index would learn that the Couillards had given a mortgage to the bank on April 23, 2008, but might remain unaware

of the fact that the bank claimed more collateral than was described in the document itself.[14]

■ The trustee's complaint is based upon the "strong-arm" powers which Congress has granted to bankruptcy trustees. The purpose of these provisions is to equip the trustee with the ability to gather property of the estate for the benefit of unsecured creditors. *HSBC Bank USA v. Perkins*, 451 B.R. 555 (N.D.Ala.2011). Under 11 U.S.C. § 544(a)(3), a bankruptcy trustee shall have the rights and powers of a "bona fide purchaser of real property ... that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case." As such, a bankruptcy trustee in Wisconsin may exercise the rights of a subsequent purchaser under Wis. Stat. § 706.08(1). *In re Carley Capital Group*, 117 B.R. 951, 957–58 (Bankr.W.D.Wis. 1990).

■ In Wisconsin, an interest in property can be defeated if it is left unrecorded (or is not *properly* recorded). Wis. Stat. § 706.08(1)(a) provides that:

8. *See* Exhibit 4 to the Wyse Affidavit.

9. *Id.*

10. *Id.*

11. It appears Ms. Wyse (a paralegal with the law firm which represents the bank) made an effort to locate both Ms. Montaperto and Jennifer Wall, the notary public who verified the signature on the affidavit of correction. *See* Wyse Affidavit ¶¶ 9–18. Ms. Wyse was unable to speak with either of these individuals, but did speak with a person who confirmed that Ms. Montaperto worked at Lenders First Choice until it went out of business. It appears that Lenders First Choice prepared the Settlement Statement for the refinancing of the Couillards' property. *See* Exhibit 7 to the Wyse Affidavit. However, the Settlement

Statement was not executed by Ms. Montaperto and there is no indication in any of the documents that she personally participated in any aspect of the transaction other than to sign the affidavit of correction.

12. *See* ¶¶ 5–6 of the Affidavit of Sara Koss submitted in support of the bank's motion. Ms. Koss is the Lincoln County Register of Deeds.

13. *See* Koss Affidavit ¶ 7.

14. In addition to the incomplete legal description, review of the original mortgage would also reveal that it does not include the parcel identification numbers of the homestead or vacant land and incorrectly identifies the street address of the property. *See* Wyse Affidavit, Exhibits 3 and 5.

*[E]very* conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first (emphasis added).

These recording requirements "shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity." *See* Wis. Stat. § 706.001(1). For purposes of this statute, a purchaser in good faith is one without notice of any existing rights in the land. *Bump v. Dahl,* 26 Wis.2d 607, 133 N.W.2d 295, 299 (Wis.1965).

■ Outside of bankruptcy, if a subsequent purchaser has either actual or constructive notice of a prior competing interest, these protections are unavailable. *In re R.C.R. Corp.,* 58 B.R. 291, 295 (Bankr. W.D.Wis.1986) ("The 'no notice' requirement of the statute means that a party must have neither actual knowledge nor constructive notice of the rights of other parties."). In the bankruptcy context, actual knowledge is irrelevant to the trustee's hypothetical bona fide purchaser status. *See* 11 U.S.C. § 544(a) (the trustee's rights are "without regard to any knowledge of the trustee or of any creditor"); *see also Berge v. Value Enterprises, Ltd. (In re Berge),* 39 B.R. 960 (Bankr. W.D.Wis.1984).

■ However, if state law provides that a subsequent purchaser would have had *constructive notice* of an interest in property, the trustee may be similarly bound. *R.C.R. Corp.,* 58 B.R. at 295: *see also In re Probasco,* 839 F.2d 1352, 1355 (9th Cir.1988) (constructive notice of unrecorded interest precluded avoidance); *Lassman v. OneWest Bank, FSB (In re Swift),* 458 B.R. 8, 13 (Bankr.D.Mass.

2011)("a trustee's ability to avoid a transfer is subject to constructive knowledge"). Prospective purchasers can be charged with notice of competing claims that are revealed by "use or occupancy of the real estate" or a review of the chain of title (i.e., the records in the office of the register of deeds and other public records). *See* Wis. Stat. § 706.09(2)(a); *Bump,* 133 N.W.2d at 300.

■ The recording statute contemplates that relevant instruments will be properly filed so that the complete title history of a parcel can be quickly determined from the public record, thereby preventing subsequent purchasers from being hurt by hidden (or undiscovered) transactions. *See Kordecki v. Rizzo,* 106 Wis.2d 713, 317 N.W.2d 479, 482 (Wis.1982). Wisconsin law anticipates that subsequent purchasers and other parties will normally obtain notice of earlier conveyances from the title record. *See* Wis. Stat. § 706.09(1)(b). A prior adverse interest which relies upon a conveyance outside the chain of title for its validity or priority is essentially subordinated to later—but properly recorded—interests. In this regard, § 706.09(1)(b) provides that a subsequent purchaser's interest is *superior* to an interest created by:

*Any* conveyance, transaction or event not appearing of record in the chain of title to the real estate affected, unless such conveyance, transaction or event is identified by definite reference in an instrument of record in such chain. No reference shall be definite which fails to specify, by direct reference to a particular place in the public land record, or, by positive statement, the nature and scope of the prior outstanding interest created or affected by such conveyance, transaction or event, the identity of the original or subsequent owner or holder of such interest, the real estate affected, and the

approximate date of such conveyance, transaction or event (emphasis added).

■ Purchasers are presumed to know about every *properly* recorded conveyance of the property. *Kordecki*, 317 N.W.2d at 482–83 (a purchaser in good faith is "deemed to have examined the record and to have notice of the contents of all instruments in the chain of title and of the contents of instruments referred to in an instrument in the chain of title"). The chain of title includes all "instruments, actions and proceedings discoverable by reasonable search of the public records and indices affecting real estate in the offices of the register of deeds and in probate and of clerks of courts of the counties in which the real estate is located." Wis. Stat. § 706.09(4). If a conveyance isn't in the chain of title, or referenced by something in the chain of title, inquiry into the record is complete. *Carley Capital*, 117 B.R. at 959; *Assocs. Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, 258 Wis.2d 915, 656 N.W.2d 56, 61 (2002).

■ Even if something appears in the chain of title, it may not have been "recorded as provided by law" within the context of § 706.08(1)(a). Wisconsin law specifies that certain information must be included in recordable documents. *See* Wis. Stat. § 706.05(2). Importantly for the matter at hand, Wis. Stat. § 706.05(2m) provides that:

> [A]ny document submitted for recording or filing that is to be indexed in the real estate records, any document submitted for recording or filing that modifies an original mortgage or land contract and any subordination agreement submitted for recording or filing shall contain the full legal description of the property to which it relates if the document or subordination agreement is intended to relate to a particular parcel of land. The legal description may be included on the document or may be attached to the document. Any such document shall also contain the document number of any original mortgage or land contract that the document affects and, if given on the original mortgage or land contract, the volume and page numbers of the original mortgage or land contract.

The law does provide that a document which fails to meet the statutory requirements may still be deemed to be "duly recorded" if "the instrument is *properly* indexed in a public index maintained in the office of such register of deeds and recorded at length at the place there shown." *See* Wis. Stat. § 706.05(7) (emphasis added). However, this does not "eviscerate" the protections afforded to good faith purchasers. *In re Wittman*, No. 10–22811, 2012 WL 2742099, at *4 (Bankr.E.D.Wis. July 9, 2012).

The trustee's argument is that the bank did not originally have a properly recorded mortgage on the homestead parcel or the vacant land, and the affidavit of correction is invalid because it was not signed by the Couillards (which would mean that it was not "recorded as provided by law" or "properly" indexed). Thus, the argument goes, a subsequent purchaser would have had constructive notice of nothing more than an invalid affidavit which improperly purported to add property to a defective mortgage. A good faith purchaser of the homestead parcel or the vacant land would therefore take title without constructive notice of the bank's interest.

The bank, in contrast, contends that the original mortgage *did* effectively include the homestead and the vacant land, even if it lacked the legal descriptions required for proper recording. Under this theory, the affidavit of correction did not "add" property to the mortgage but simply corrected a defect within it for recording purposes. Once the affidavit was indexed, any subse-

quent purchaser of the two parcels would have had sufficient notice of the bank's claim to prompt additional inquiry which would have inevitably uncovered the original mortgage (after all, it was at least *referenced* by a document in the chain of title). And even if none of this were true, the bank believes that it is still entitled to assert an equitable lien against the property.

Setting aside for a moment the issue of the affidavit of correction, the essential problem with the bank's argument is the manner in which it conflates what renders an interest in property enforceable *between* the parties with what makes it enforceable against *third* parties. For example, at one point in its brief the bank contends that the trustee must prove that the mortgage "fails to identify the land" in order to have it declared void, and then focuses upon whether the mortgage satisfies the statute of frauds.[15]

■■■ Wis. Stat. § 706.02(1)(b) specifies that transactions involving real estate require a written conveyance which "identifies the land." As the bank notes, Wisconsin courts have said that a conveyance "identifies the land" if it describes the parcel with "reasonable certainty." *Wiegand v. Gissal*, 28 Wis.2d 488, 492, 137 N.W.2d 412 (1965). The Wisconsin Supreme Court has indicated that a conveyance need not contain a legal description of the property, and the concept of "reasonable certainty" is satisfied if the conveyance "refers to [the property] in such terms that by the aid of the facts and circumstances surrounding the parties at the time the court can . . . determine the land which is to be conveyed." *Kuester v. Rowlands*, 250 Wis. 277, 279, 26 N.W.2d 639 (1947).

■■■ In *Kuester*, the contract indicated that the seller was to convey his property (which was "particularly described as part of sec. 13, Town of Genesee, county of Waukesha"). Although the seller subsequently contended that the agreement was too vague, the court concluded that the conveyance was sufficiently definite as to be valid. *Id.* In fact, if a seller agrees to convey "my property" and owns no other property, the conveyance might be valid. *Id.* at 640–41. But "validity" in this context focuses upon whether the purchaser could compel the seller's performance of the agreement as between themselves— i.e., whether the agreement "satisfies" the statute of frauds. *Id.* at 640. Satisfying the statute of frauds and satisfying the requirements for recording (thus placing other parties on notice of a claimed interest) often overlap but are ultimately distinct legal concepts.

As the case law reflects, new problems arise when there is a competing purchaser (or other competing interest). Say a property owner executes a mortgage which is intended to convey an interest in a specific piece of property, but which fails to accurately describe the property and is therefore not properly indexed by the register of deeds. Now the question is not whether the agreement is void on its face, but whether it is binding upon a third party.[16] In *Brown*, for example, a simple error in a legal description (the transposition of numbers in a reference to a certified survey map) meant that a quitclaim deed was not

---

**15.** Admittedly, the trustee also argues that the mortgage fails to sufficiently identify parcels 1 and 2, and also discusses this issue in the context of the statute of frauds. As shall be seen, the sufficiency of identification depends upon the context in which it arises.

**16.** To use the language of the statutes, a transaction may be "valid" under § 706.02(1) and still be "void" as to a subsequent purchaser under § 706.08(1)(a)—presuming, of course, that the subsequent purchaser lacks constructive notice of the competing interest.

properly recorded. 656 N.W.2d at 60. Because the deed did not appear in the tract index (and thus was not part of the chain of title), the deed was void as against a subsequent mortgagee who recorded first in good faith and for a valuable consideration. *Id.*[17]

The statute of frauds and the recording statute were designed to achieve different goals. The law requires a written document which satisfies certain basic criteria and is signed by the grantor so that there is concrete evidence of an intent to be bound by an agreement for the sale of real property. *Nelson v. Albrechtson,* 93 Wis.2d 552, 287 N.W.2d 811, 816 (Wis. 1980). It is not intended to give either party a "technical escape from a fair and definite agreement." *Kenner v. Edwards Realty & Finance Co.,* 204 Wis. 575, 236 N.W. 597, 602 (Wis.1931).

Meanwhile, the purpose of the recording statute is to ensure a "clear and certain system of property conveyance." *Brown,* 656 N.W.2d at 61. The recording provisions reflect a compromise between two competing goals—namely, merchantability of title and the protection of legitimate but otherwise hidden land interests. *Bank of New Glarus v. Swartwood,* 2006 WI App 224, 297 Wis.2d 458, 725 N.W.2d 944, 956 (2006) (citing *Badger State Agri–Credit & Realty, Inc. v. Lubahn,* 122 Wis.2d 718, 365 N.W.2d 616, 621 (Wis.Ct. App.1985)). The Wisconsin legislature titled the scales in favor of merchantability

by requiring parties to properly record their interests in property. *See Kordecki,* 317 N.W.2d at 482 ("The recording statute is designed ... to protect purchasers who rely on the record and purchase in good faith and for value over those who have not recorded their interest in the real estate thereby possibly misleading others.").[18]

In *Brown,* the court stated:

Wisconsin Stat. § 706.09(2)(b) does not require purchasers for value to see if there is *some way,* in the absence of a proper recording, that an interest could *possibly* be discovered. Indeed, such a requirement would be contrary to the very purpose of the recording statutes— to ensure a clear and certain system of property conveyance (emphasis in original).

656 N.W.2d at 61. Two recent bankruptcy opinions (one from this Court, one issued in the Eastern District) have concluded that in Wisconsin an instrument which does not appear in the tract index against a particular parcel is not properly recorded "as provided by law." *See In re Thulis,* 474 B.R. 668, 678 (Bankr.W.D.Wis.2012); *In re Wittman,* No. 10–22811, 2012 WL 2742099, at *7 (Bankr.E.D.Wis. July 9, 2012).

Considered alone, the bank's original mortgage contained defects which precluded it from appearing in the tract index against the homestead parcel or the vacant land. The mortgage was therefore not in the chain of title. *Thulis,* 474 B.R.

---

**17.** The case did not discuss whether the instrument satisfied the statute of frauds. Presumably, there was sufficient other information to render it valid between the parties (i.e., enough information that, "with the aid of the facts and circumstances" a court could determine what property was actually involved). But the purchasers failed to supply correct information to the register of deeds in order to properly record it and place other parties on notice of their claim.

**18.** A subsequent purchaser is thus only charged with notice of claims which appear in the chain of title or are evidenced by "use or occupancy of the real estate by any person at the time such purchaser's interest therein arises." Wis. Stat. § 706.09(2)(a). As Wisconsin courts have observed, "No other types of constructive notice are detailed." *Swartwood,* 725 N.W.2d at 956.

at 678. In the normal instance, a subsequent purchaser would take title to those parcels without constructive notice of the mortgage, rendering it void as against such a purchaser. *Id.* The fact that the mortgage otherwise appears in the grantor/grantee index (or a computer system at the Register of Deeds) is irrelevant. *Wittman,* 2012 WL 2742099, at *7; *Brown,* 656 N.W.2d at 61.[19] The question is whether the affidavit of correction alters this outcome.

It should come as no surprise that real estate documents occasionally need to be corrected after they are recorded (and for much the same reasons as in this case). Parties often prefer using affidavits for this purpose rather than a court order and for many years Wisconsin law explicitly authorized this practice. In 1969, the Wisconsin legislature repealed the statutory authority for correction by affidavit, although it was not clear whether the change was intended to prohibit their use. *See* Sara B. Andrew, *Correcting Real Estate Documents.* 83 Wis. Law. 30 (Oct. 2010). Affidavits of correction nonetheless remained a popular option until 2007, when the Wisconsin Court of Appeals found such an affidavit invalid. *See Smiljanic v. Niedermeyer,* 2007 WI App 182, 304 Wis.2d 197, 737 N.W.2d 436, 445 (2007) ("[T]here was and is no statutory authority for accomplishing a correction of the description of the property conveyed by the deed by simply recording [an] . . . affidavit.").

The Wisconsin legislature responded by enacting Wis. Stat. § 706.085, which became effective in May of 2010. This statute authorizes the correction of real estate documents by affidavit, and also provides for retroactive validation of previously recorded instruments which comply with its requirements. *See* Wis. Stat. § 706.085(4). A valid affidavit may correct a legal description or other information (such as a party's name, the tax parcel number, whether the property is homestead, and the like). To be valid, however, an affidavit may only be executed by certain individuals, and their identity varies depending upon the nature of the correction itself.

For example, a correction instrument that "adds, removes, or replaces a divisible parcel in a conveyance" may only be signed by specific people. Section 706.085(2)(b)(3)(a) provides that a correction instrument which "supplies a lot, block, unit, or building number or letter that was omitted from a conveyance" may be signed by any party identified in § 706.085(2)(b)(1)—namely, a person "having personal knowledge of the circumstances of the conveyance and of the facts recited in the correction instrument." These people may include the grantor, the grantee, the person who drafted the conveyance that is the subject of the correction instrument, or the person who acted as the settlement agent in the transaction that is the subject of the conveyance. *Id.*[20]

---

**19.** Much as in *Wittman,* it is clear that in this case "the tract index system would not have shown the document upon which the dispute was based." In similar situations Wisconsin courts have "rejected the claim that a search of a computer system maintained by the Register of Deeds was required for the purchaser to perform a reasonable search because Wis. Stat. § 706.09(2)(b) imposes no such requirement on a purchaser for value." 2012 WL 2742099, at *7.

**20.** While the statute contemplates that a corrective instrument should recite the basis for the person's personal knowledge, an instrument executed before the effective date of the statute (such as the affidavit in this case) is not rendered ineffective solely "by reason of the instrument's failure to recite that the maker had the knowledge or capacity required." *See* Wis. Stat. § 706.085(2)(b)(1). As such, the fact that the affidavit fails to *recite* the basis for Ms. Montaperto's personal knowl-

However, if an entire *parcel* is being added to a conveyance "that also correctly conveys other land," the affidavit is only valid if it is signed by the grantor (in this case, the Couillards). See Wis. Stat. § 706.085(2)(b)(3)(b). The trustee contends that this subsection applies to the bank's mortgage, and that the affidavit is invalid because the Couillards did not sign it. The bank, on the other hand, believes that the correction falls under § 706.085(2)(b)(3)(a) insofar as the original mortgage identified the property with sufficient certainty to be valid under the statute of frauds. To the bank, nothing was "added" to the mortgage because it was already valid against the homestead parcel and the vacant land; the affidavit simply supplied a legal description of the property already covered by the mortgage.

The statute of frauds—Wis. Stat. § 706.02—specifically describes the "formal requisites" of documents which convey interests in real property. Wis. Stat. § 706.05, however, details the "formal requisites" required in order to *record* such instruments. As has been discussed previously, these two statutes are not identical. The information required to properly record an instrument in order to place subsequent purchasers (or other claimants) on notice is not defined by the recording statutes. Corrective instruments are intended to fix documents which may not meet the *recording requirements* rather than the statute of frauds. See § 706.085(1) ("An instrument correcting a *previously recorded conveyance* shall be entitled to record *in accordance with s.706.05* in the office of the register of deeds of the county in which the conveyance is recorded . . . .")(emphasis added).

One of the requirements for a document to be properly recorded under § 706.05 is that it "shall contain the full legal description of the property to which it relates if the document or subordination agreement is intended to relate to a particular parcel of land." See § 706.05(2m)(a). The bank's original mortgage did not contain the legal description of either the homestead parcel or the vacant land. As such, it did not meet the formal requisites to be properly recorded against either parcel. It follows that a corrective affidavit which includes those legal descriptions must be deemed to be "adding" parcels for recording purposes (which is, after all, the entire point of the exercise).[21] Since the affidavit sought to add parcels to the conveyance, it is invalid under § 706.085 because it was not signed by the Couillards themselves.[22]

---

edge of the transaction does not affect its validity. In order to be valid, however, there must be evidence that she did, in fact, have "personal knowledge of the circumstances of the conveyance." The bank has proffered evidence that she worked at the company which prepared the Settlement Statement, but no evidence that she participated in any way in this particular transaction.

21. Put another way, the bank's affidavit was intended to increase the territorial scope of the original mortgage's constructive notice. While the original mortgage was only indexed against one small component of the Couillards' property, the affidavit sought to index two additional parcels.

22. In addition, a careful reading of § 706.085(2)(b)(3)(a)—the subsection the bank argues validates the execution of the affidavit by Ms. Montaperto—reveals the very limited nature of the corrections which it authorizes. It appears to authorize only instruments which supply minor corrections of numbers or letters, whether of lots, blocks, units, or buildings. Addition of an entire legal description appears beyond the subsection's scope. Even if that were not the case, the bank's motion for summary judgment could not be granted because the bank has offered no evidence of Ms. Montaperto's personal knowledge of the transaction, which is also required for the affidavit to be valid.

A subsequent purchaser who reviewed the chain of title for the homestead parcel and the vacant land through the Lincoln County title index would find only one document referencing the bank's interest—the affidavit of correction. That document is, on its face, invalid. Neither the affidavit of correction nor the original mortgage were "properly recorded by law" in the sense that neither complied with the recording requirements necessary to be valid against third parties. This raises a problematic question. Does an improperly recorded affidavit of correction which references another improperly recorded document constitute constructive notice of much at all?

The best answer is found in the principles behind the Wisconsin recording scheme itself. The purpose of the recording statute is to ensure a "clear and certain system of property conveyance." *Brown*, 656 N.W.2d at 61. There are a few exceptions, but the general rule is that an instrument must be properly recorded in order to be effective against third parties. As § 706.08(1)(a) provides, every conveyance "that is not recorded as provided by law" shall be void as against a subsequent good faith purchaser. These conveyances were not recorded "as provided by law."

As the Wisconsin Supreme Court has stated, in determining rights under the recording statute the question is "what the record shows." *Kordecki*, 317 N.W.2d at 482. Here, the record shows only an ineffective attempt to increase the recorded scope of a mortgage which did not originally provide notice to other parties of a claimed interest in either the homestead parcel or the vacant land. The record title is "authoritative," and it is intended to "protect a purchaser who relies on the record." *Id.* Wisconsin law places the burden on parties to follow the directions for proper recording and the recording statute is designed to "force the recording of all instruments so that the record will show a complete history of the title." *Id.* The failure to properly record an instrument has consequences, and one of those is that it becomes void as against a subsequent good faith purchaser. Wis. Stat. § 706.08(1)(a); *Thulis*, 474 B.R. at 679.

In the alternative, the bank contends that it is entitled to assert an equitable lien against the homestead and the vacant land. The bank invokes the concept of equitable subrogation, which is a doctrine designed to avoid unjust enrichment. As the Wisconsin Supreme Court has observed, subrogation "may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." *Rock River Lumber Corp. v. Universal Mortg. Corp.*, 82 Wis.2d 235, 262 N.W.2d 114, 116 (Wis.1978).

In *Rock River*, the court indicated that a lender can be entitled to subrogation "where money is advanced in reliance upon a justifiable expectation that the lender will have security equivalent to that which his advances have discharged ... *provided that no innocent third party will suffer.*" *Id.* at 117 (emphasis added). In this case, the bank argues that it paid $162,790.30 to discharge the prior mortgage on the property and had a justifiable expectation that it would have collateral equivalent to the liens it paid off.

Equitable subrogation, however, is not simply based on whether a lender paid another's debt. It contemplates a balancing of the equities between competing claimants. *Countrywide Home Loans, Inc. v. Schmidt*, 2007 WI App 243, 306 Wis.2d 200, 742 N.W.2d 901 (2007). More importantly, subrogation is only appropri-

ate if it will not "materially prejudice the holders of intervening interests in the real estate." *Id.,* 742 N.W.2d at 906 (quoting Restatement (Third) of Property: Mortgages § 7.6(b)(4) (1997)).

██ A bankruptcy trustee is entitled to be treated as a "bona fide purchaser of real property" under state law as of the commencement of the case. 11 U.S.C. § 544(a)(3). This means that the trustee is entitled to the same rights as a subsequent purchaser "in good faith and for a valuable consideration" under Wis. Stat. § 706.08(1)(a). As indicated previously, under the facts of this case such a purchaser would not have had constructive notice of the bank's mortgage. The trustee is deemed to have expended a "valuable consideration" in purchasing the property; in essence, the trustee must be regarded as holding an "intervening interest" in the real estate which was obtained without any notice of the bank's mortgage.

These facts can be contrasted with those in a case such as *Schmidt.* There, the owner contracted to sell his real estate, which was subject to an existing (valid) mortgage. He then refused to complete the sale, and the purchaser sued for specific performance. In the interim, the owner refinanced the property. The purchaser, of course, would have been required to pay off the original mortgages and had notice (either actual or constructive) of those liens. The purchaser was hardly prejudiced by the substitution of the lenders (and in fact stipulated that the refinancing lender was entitled to subrogation). The only question in the case was the *amount* of the lender's claim, which the court refused to let exceed the purchase price bargained for by the purchaser. As the court observed, the purchaser's actions were "blameless," and equity required that she be held harmless. 742 N.W.2d at 906–07.

██ Likewise, the law contemplates that a subsequent purchaser who takes property without notice of a competing interest is "blameless" and should be protected from competing claimants who failed to satisfy the recording requirements. *See Swartwood,* 725 N.W.2d at 953 (a purpose of the recording statutes "is to protect purchasers or mortgagees from adverse claims by requiring the recording of interests"). Recording statutes "forbid those who do not record their interest from asserting title against persons who innocently purchase land from the record owner." *State v. Barkdoll,* 99 Wis.2d 163, 298 N.W.2d 539, 541 n. 3 (Wis.1980).

██ If the fact of ownership (or the existence of a mortgage) is concealed from third parties, the law contemplates that "the person concealing ownership cannot assert ownership to the detriment of one who acts in reliance upon silence." *Id.* Essentially, the recording statutes put the burden on the recording party to properly perfect its interest so as to put other parties on notice. *Kordecki,* 317 N.W.2d at 482 (the statutes are designed "to force the recording of all instruments"). A failure to *properly* record an interest can produce the same problem as a completely unrecorded interest: namely, that it remains "concealed" from other parties. *Brown,* 656 N.W.2d at 61 (subsequent purchasers are not obligated to see if there is some way, "in the absence of a proper recording," that an interest could possibly be discovered).

Imposition of an equitable lien would materially prejudice the trustee's interest as a subsequent good faith (or "innocent" and "blameless") purchaser for a valuable consideration. Equity does not permit such a result. *Rock River,* 262 N.W.2d at 117 (subrogation is only permitted "provided that no innocent third parties will suf-

fer"); *Schmidt,* 742 N.W.2d at 906 (subrogation cannot occur if it would "materially prejudice the holders of intervening interests in the real estate").

As a matter of law, the Court concludes that neither the mortgage nor the affidavit of correction were properly recorded. A subsequent purchaser would not have constructive notice of the bank's claimed interest in either the homestead property or the vacant land. Because subrogation would materially prejudice the trustee's rights as an intervening interest in the real estate, the bank is not entitled to an equitable lien. As such, the bank's motion for summary judgment must be denied.

During oral argument, the trustee moved for at least partial summary judgment based on the pleadings previously submitted. The bank contends that there are genuine issues of material fact which preclude entry of judgment in the trustee's favor. Most notably, the bank sought to expand upon its contention that the Register of Deeds might have received a complete copy of the original mortgage (i.e., one which contained the full legal description of all three components of the property) and failed to properly scan or index the document. The Court has, by separate order, scheduled a trial. However, the bank should also respond, in writing, to the trustee's request for summary judgment and indicate what material facts it believes remain in dispute.[23] This response should be filed by November 21, 2012.

▬▬▬ Finally, there are several other pending matters which can be addressed in the context of this order. The bank has sought relief from the automatic stay to foreclose its mortgage. Given that the Court has found the mortgage was not properly recorded and is invalid against the trustee as a subsequent purchaser for value, the Court can find no present cause to lift the stay. The trustee objected to the debtors' exemption in the property to the extent that if the trustee were successful in avoiding the mortgage, the trustee would assume the bank's equity position and the debtors would not be entitled to an exemption under 11 U.S.C. § 522(g). This objection will be sustained. A separate order shall be entered in accordance with this decision.

### ORDER

The Court has today entered its decision.

Accordingly,

IT IS ORDERED that:

1. The bank's motion for summary judgment is denied;

2 The matter is scheduled for trial on December 12, 2012, at 10:30 a.m., at the Municipal Council Chambers, Wausau City Hall, 407 Grant Street, Wausau, Wisconsin;

3. The bank shall respond to the trustee's oral motion for summary judgment by November 21, 2012, and identify what material facts it believes remain in dispute;

4. The bank's motion for relief from the automatic stay and abandonment is denied; and

5. The trustee's objection to the debtors' claim of exemptions is sustained.

---

**23.** Part of the trustee's complaint seeks the imposition of an easement by necessity against the existing easement which is subject to the bank's mortgage. This relief is most appropriately sought in state court, as it is not specifically related to the trustee's exercise of his strong-arm powers.